FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 6 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

RECEIVED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
2016 DEC -6 PM 12:15
JAMES W. McCORMACK
BY:_____

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                    PLAINTIFF

VS.                          CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES          DEFENDANTS

## REPONSE IN OPPOSITION TO MOTION TO DISMISS

1.    Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response

in Opposition to the Defendant's Motion to Dismiss.

2.    Before, we begin, this Court needs to be mindful of the limitations placed on its

authority: Namely, this Court cannot raise new claims or defenses *sua sponte*, unless it pertains

to the Court's subject-matter jurisdiction.

(a)    See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial

system], courts are generally limited to addressing the claims and arguments advanced by the

parties. Courts do not usually raise claims or arguments on their own")

(b)    See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence

of failing to raise a claim for adjudication at the proper time is generally forfeiture of that

claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to

otherwise viable legal claims").

(c)    See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to

plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in

Rule 8(c)).

(d)    See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th

Cir. 1976) (same).

3.      Thus, if the arguments contained in the Defendant's Motion to Dismiss are without merit, this Court cannot "bail them out" by raising defenses of its own, unless they pertain to the Court's subject-matter jurisdiction. The grounds raised by the Defendants are those they are stuck with.

4.      I would also like to remind this Court that it cannot issue an order without giving an explanation behind it. Failure to give an explanation constitutes an automatic abuse of discretion.

(a)      See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations ... but this does not permit a district court to give no explanation for its decision"); see also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992) ("The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice.")

(b)      See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) ("we neverthe-less find it necessary to remand because we cannot determine from the record whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion")

(c)      See also Foman v. Davis, 371 US 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.")

(d)      See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) ("We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order.")

(e)      See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of

specific findings and the evidence in the record, we find that the district court abused its discretion").

(f)     See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

(g)     See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

(h)     See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

(i)     See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.")

(j)     See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

(k)     See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

5.     That being said, let us continue with the response to the Defendant's Motion to Dismiss.

6.     This is a patently frivolous motion that is filed solely for purposes of delay. The Defendants' grounds for dismissal basically boil down to five different issues:

(a)      The case is barred by the Eleventh Amendment.

(b)      The ARS is permitted, by Arkansas state law (but not by federal law) to discriminate, even if the same conduct would amount to discrimination if performed by anyone else under otherwise identical circumstances.

(c)      The mere fact that Plaintiff has X symptoms, alone, without more, automatically causes him to be "not otherwise qualified" for college or work, and that they require no evidence to support that, other than the mere fact that the symptoms *exist*.

(d)      There are no factual allegations, period, to support what they consider to be threadbare recitals of the essential elements of retaliation. Note that they are not merely claiming that my factual allegations are insufficient to infer retaliation; they are claiming that these allegations do not even *exist*; no rebuttal needed because there is nothing to rebut.

(e)      To recover on a claim of retaliation, the retaliatory animus must be the *sole* reason behind the adverse action. If it is even so much as a co-motive, that does not count.

7.      All five of these arguments are patently frivolous. The attorney, in all likelihood, knows full well that these arguments are legally meritless, but she is pressing them anyway just to try and delay the judgment, which would certainly explain why she never bothered to serve me with a copy of the Motion to Dismiss until I called her out on it and moved for sanctions.

    **A.      Sovereign Immunity**

8.      First, the Defendants argue that all three claims are barred by sovereign immunity under the Eleventh Amendment. This is a frivolous argument that is already rebutted by clearly established black letter law. I have already provided a rebuttal of this argument in the Complaint (see ¶¶ 3-6 of the Complaint and Jury Demand), which makes this argument twice as frivolous as it otherwise would be..

### 1.   There is no 11th Amendment immunity for the Americans with Disabilities Act.

9.      The Americans with Disabilities Act clearly states "A State shall not be immune under the

eleventh amendment to the Constitution of the United States from an action in Federal or State

court of competent jurisdiction for a violation of this chapter. In any action against a State for a

violation of the requirements of this chapter, remedies (including remedies both at law and in

equity) are available for such a violation to the same extent as such remedies are available for

such a violation in an action against any public or private entity other than a State." See 42 USC

§ 12202.

10.     The Supreme Court has held that this section is not unconstitutional, but is a valid

exercise of Congress's enforcement power under Section 5 of the 14th Amendment. See

Tennessee v. Lane, 541 US 509 (2004) ("Title II is a valid exercise of Congress' §5 enforcement

power … Title II is an appropriate response to this history and pattern of unequal treatment.

Unquestionably, it is valid §5 legislation").

11.     Therefore, the Defendants' arguments that the ADA claims are barred by the Eleventh

Amendment are patently frivolous and should be dismissed out of hand.

### 2.   The State of Arkansas and ARS are not defendants in the § 1983 claim.

12.     The Defendants also state that the § 1983 claim must also be dismissed for Eleventh

Amendment immunity. This is also patently frivolous, but not for the same reasons as above.

13.     The Defense Attorney appears to believe that the State of Arkansas and ARS were made

defendants in the § 1983 claim. This is clearly not the case if one merely reads the Complaint and

Jury Demand. You do not even have to read the entire Complaint; literally the *first paragraph*

sets the record straight: "Plaintiff also sues <u>Amy Jones</u> for a violation of 42 USC § 1983 for an

act of First Amendment Retaliation." Underlined for emphasis.

14.     Therefore, the State of Arkansas and ARS are not entitled to dismissal of the § 1983

claim ... not because they are immune, but because there is nothing to dismiss.

15.     Amy Jones, however, *is* a defendant in that claim. She, however, is not entitled to

dismissal either. Individual state officers never had any Eleventh Amendment immunity in the

first place, let alone whether it was waived or abrogated. See ex parte Young, 209 US 123

(1908). She is subject to suit for damages, not merely injunctive relief, and that includes punitive

damages; see Trobaugh v. Hall, 176 F. 3d 1087, 1089 (8th Cir. 1999) ("Further, we ask the

District Court to reconsider awarding punitive damages against [the Defendant] ... This conduct

amounted to reckless or callous indifference to [Plaintiff's] First Amendment right ... and may

call for deterrence and punishment over and above that provided by a compensatory award); see

also Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir.1997) ("In a § 1983 case, both compensatory

and punitive damages are available upon proper proof").

16.     So, the sovereign immunity defense is meritless on all fronts. Whether it be for the ADA

claims or the § 1983 claims, the Defendants are clearly not immune from suit.

### B.     ADA Discrimination Claim

17.     Next, the Defendants argue that I have failed to state a claim for discrimination. This

section of their Motion probably contains the world record for the most frivolous legal argument

ever made.

#### 1.     The State of Arkansas' attempt to make itself above the law

18.     This is, without a doubt, one of the most ridiculous and frivolous arguments that I have

ever seen any defendant raise. Their argument is that I am not qualified solely on the grounds

that Amy Jones said so. Their exact words are "[T]he determination of whether an individual

[meets a particular requirement] is solely within the discretion of the ARS." Their argument appears to be that, even if they consider protected classes or activities as a factor in their decisions, it is still within their discretion. If they believe that a black or Hispanic person's race makes them unlikely to "succeed in the workforce," that is still within their discretion; if they believe that a Muslim person's religion makes them unlikely to "succeed in the workforce," that is still within their discretion. I am unqualified for no other reason than they *say* I am unqualified.

19.     In other words, according to them, their arbitrary whim can never amount to discrimination, even if the same conduct would otherwise constitute discrimination if committed by anyone else under otherwise identical circumstances. They argue that, even if federal ADA law forbids them from considering my protected class and/or protected activities, they are still allowed to consider them nevertheless. More importantly, they argue that their decisions are entirely unreviewable, by administrative appeal, judicial review, or otherwise.

20.     In other words, they are claiming that they are above the law.

21.     Remember that this Court cannot create new defenses for the Defendants, as established in ¶¶ 2-3 of this Response. If this argument is without merit, then the argument must fail. The Court cannot bail the Defendants out with a better defense. And oh boy, this argument is without merit. As I said earlier, this is probably the most frivolous argument I've ever seen. Many people probably would like to think, in their heads, that they are above the law, but this is probably the first time in the nation's history (and almost certainly the first time in the history of this district court) that someone has ever made a serious attempt to argue this in a motion.

22.     The Defendants are basically saying that they are the only ones who get to decide the discriminatory nature of their own actions. Not only does that fly in the face of everything our

justice system stands for (more on that in a minute), but it is not even properly before the court in the first instance. All motions in this Court must contain "a concise statement of relevant facts **_and applicable law_**." See AR Local Rule 7.2(a) (emphasis added). Without a citation of applicable law, the argument must be stricken as not being properly before the Court. The Defendants have not provided even a single federal statute or case law to support their claim that they are the only ones who get to decide if their actions are discriminatory (because such a law would be ridiculous).

23.    The Defendants have, rather humorously, attempted to dance around this requirement by providing some *state*-level statutes that supposedly give the ARS directors unreviewable discretion to decide the legality of their own decisions. But without even looking at those statutes, I can already tell that they are not "applicable" law in this case; do you know why? Because they are *state level* statutes!

24.    I should not even have to explain this! We are taught in third grade that, whenever federal law is in conflict with state law, federal law is always supreme! Always! See U.S. Constitution, Article 6, Section 2.

25.    So, the Arkansas state statutes can go take a hike as far as this case is concerned. They might as well be offering the statutes of an entirely different state, or even the laws of another country, to support their claims.

26.    So this Court must strike this portion of the Defendants' Motion, since, without any legal authorities that are even arguably applicable here, this section is technically insufficient according to Local Rule 7.2(a).

27.    Even if it is properly before the Court, it is still patently frivolous. As stated earlier, it flies in the face of everything our justice system is supposed to stand for. Everyone with even a

single semester of legal training (or even better; just a little bit of common sense) can tell you that only courts of competent jurisdiction and/or the juries acting under their authority and direction have the power to decide whether or not someone has broken the law. Imagine if an employer produced a copy of their company handbook, which purported to allow supervisors and managers to hire and fire whoever they want for absolutely any reason, and then tried to use *that* to claim exemption from federal discrimination laws!

28.    It is already black letter law that defendants in discrimination cases cannot arbitrarily create whatever qualifications they want for their services and/or employment. As if this needed any actual legal citation beyond simply urging "common sense," here is some case law:

(a)    See Diaz v. Pan Am. World Airways, Inc. 442 F. 2d 385 (5th Cir. 1971) (holding that the titillation of a majority male clientel does not compel the otherwise unnecessary exclusion of male flight attendants, stating in pertinent part "Because we [and not the defendants] feel that being a female is not a 'bona fide occupational qualification' for the job of flight cabin attendant, appellee's refusal to hire appellant's class solely because of their sex, does constitute a violation of the Act").

(b)    See also Dothard v. Rawlinson, 433 US 321 (1977), holding that it is discriminatory to have an arbitrary "height and weight" requirement that does not otherwise impair a critical job function … and no, the Defendant does NOT get "sole discretion" to decide what is or isn't a critical job function.

(c)    See also Western Air Lines, Inc. v. Criswell, 472 US 400, 409 (1985), holding that you cannot set arbitrary age limits solely on the generalization that people's physical and mental abilities tend to deteriorate with age, and call that a bona fide qualification; in doing so, the court obviously rejected the Defendant's "sole discretion" that age was a bona fide

qualification ... meaning that the jury, not the Defendant, gets to decide that.

    i.    Of special note is the following excerpt from the published opinion:

"the process of psychological and physiological degeneration caused by aging varies with each individual. 'The basic research in the filed of aging has established that there is a wide range of individual physical ability regardless of age.' As a result, many older American workers perform at levels equal or superior to their younger colleagues."

    ii.    This is especially probative in the instant case, since this case involves the Defendants believing, based solely on the *existence* of a protected class, that I am incapable of X criteria, without conducting any individualized assessment. This precedent clearly rejects what the Defendants argue in this Motion: That the mere existence of a class or condition that *could*, under certain circumstances, render a person unqualified does not, by itself, justify the assembly line-esque summary rejection of all those who possess the class or condition. An individualized assessment of each person's unique abilities is required.

(d)    See also School Bd. of Nassau Cty. v. Arline, 480 US 273 (1987), which is especially valuable case law in this case, since it directly pertains to disability (as opposed to race, sex, or age) discrimination. It basically takes the legal conclusion stated in ¶ 28(c)(i)-(ii) and applies it to disability as well as age. The whole point of that case law is that Defendants cannot just *claim* that a person is unqualified and be granted sole discretion from the Courts to make that determination! They have to actually base their decisions off objective evidence, and the standard for being otherwise qualified is not the Defendants' to make. Unlike with Criswell (potentially), that is not dicta; that was the whole point of that case.

29.    The bottom line is this: While employers, government agencies, and places of public accommodation may have discretion as to who they allow into their personnel or clientele, their

decisions are still illegal if they violate federal law, and only an Act of Congress can change what constitutes a violation of federal law. They must adjust their policies to to conform to federal regulations, and if they've got a problem with that, well then … they can just pull their heads out of their rear ends.

30.     To hold otherwise would effectively mean that no discrimination case could ever succeed for any reason, regardless of the merits or evidence. A racist boss could just say that being white presented a bona fide qualification to a job, and the Courts would then have no power to declare them liable, because the racist boss would be the only one who got to decide if that was a bona fide qualification or not. Restaurants could refuse to allow Asians to eat at their restaurant on the grounds that the whole purpose for starting that restaurant was to provide a "banana-free dining experience" for their customers, and that allowing Asians to eat there would defeat the whole purpose of having that restaurant in the first place; if the business owner gets sole discretion to decide what is and isn't "essential," then the Courts could never intervene to stop them!

31.     That is what the Defendants are currently seeking in this case, but it is patently frivolous. The court should *emphatically* reject this argument.

32.     In the astronomical event that the Defendants could articulate a bona fide qualification that I supposedly do not meet, that would still require a discovery, trial, and findings of fact. Therefore, even assuming the best case scenario for the Defendants, it is still not appropriate in a Rule 12(b) Motion to Dismiss.

33.     Remember that this Court cannot create new defenses for the Defense. Therefore, the Defendants cannot be bailed out by this Court re-interpreting their patently frivolous arguments in a way they never intended.

## 2.    Defendants' requirement to engage in full investigations

34.    Next, the Defendants argue that, because they feel I display this or that symptoms, that necessarily proves that I cannot succeed in the workplace (based on their arbitrary, self-imposed definition of "success"). Their exact words are "these symptoms are illustrative of why Plaintiff could not ...succeed in the workforce." Put in laymen's terms, they believe that the mere fact that I have these symptoms is all the evidence they need that I am unemployable, and that they are not required, as a matter of law, to conduct any further investigation. They also attempt to raise – for the first time since this dispute first surfaced[1] – that they consider other factors besides academic success. However, much like the symptoms themselves, they do not feel the need to offer any evidence ... *evidence* ... ***evidence*** ... that their fears are well-founded.

35.    Put simply, this is not the law. The Defendants, by their own admission, did not conduct any analysis into my individual abilities beyond simply stating that, because I have this or that symptoms, that necessarily means I cannot "succeed" in the workforce[2]. However, well-established binding precedent clearly states that determining whether a disability makes someone unqualified ***must be based on the most recent objective medical standards of the time***!

(a)    See School Bd. of Nassau County v. Arline 480 U.S. 273 (1987) ("in order to determine whether a person handicapped ... is 'otherwise qualified' under § 504 [and, by proxy, the ADA[3]], the district court must conduct an individualized inquiry and make appropriate findings of fact, based on reasonable medical judgments given the state of

---

1    They probably just made this up on the fly, in direct response to this lawsuit, and never actually took that into consideration when they were initially considering my application.

2    Based on (again, by their own admission) their own personal, arbitrary definition of "success," something they are not granted "sole discretion" over in federal ADA law, and something state law has no weight in.

3    The construction of the Rehabilitation Act and that of the Americans with Disabilities Act are interchangeable except where the plain text of the statute unequivocally creates a difference in construction. See 42 U.S.C. § 12201(a).

medical knowledge")

(b)     See also Bragdon v. Abbott, 524 US 624, 659 (1998) ("the risk assessment must be based on medical or other objective evidence").

(c)     See also Rauenhorst v. US Dept. of Trans., 95 F. 3d 715, 716 (8th Cir. 1996) ("To answer the question of whether an individual is 'otherwise qualified,' the trier of fact will have to conduct an individualized inquiry in most cases").

(d)     See also EEOC v. Wal-Mart Stores, Inc., 477 F. 3d 561, 571 (8th Cir. 2007) ("The Supreme Court requires an individualized ... analysis that relies on the 'best current medical or other objective evidence' in order to protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear.")

(e)     See also Albertson's, Inc. v. Kirkingburg, 527 US 555, 569 (1999)("That criterion ordinarily requires an individualized assessment of the individual's present ability to safely perform the essential functions of the job, based on medical or other objective evidence" (internal citations omitted).)

(f)     See also Wood v. Omaha School Dist., 985 F. 2d 437, 439 (8th Cir. 1993)("Of course, Wood and Whitcomb are correct that the Rehabilitation Act [and, by extension, the ADA[4]] requires the district court to conduct an individualized inquiry and to make appropriate findings of fact.")

36.     To support their argument to the contrary, they cite the published opinion of Reaves v. Missouri Department of Elementary & Secondary Educ., 422 F.3d 674 (8th Cir. 2005). However, even if the Eighth Circuit had the authority to override the three Supreme Court cases of Arline, Bragdon, and Kirkingburg (which they do not), that still does not detract from the fact that the *Reaves* case tackles a very different case than this one.

---

4   See Footnote #3

37.     Even before reviewing the published opinion itself, the Defendant's own description of
the case is very telling: "The Eighth Circuit held that ***testimony demonstrated*** that the plaintiff
was not ... otherwise qualified" (emphasis added). This seems to imply that something occurred
in that case that, by the Defendants' own admission, did not occur in this case: An individualized
inquiry.

38.     Checking the published opinion itself confirms that this is in fact true. The published
opinion contains such lines as ...

(a)     "After Reaves requested a review of Steele-Lufcy's decision, a meeting was held
among Reaves, her father, and Tony Logan, the Division's Regional Manager, at which
Reaves's situation was discussed." pp. 678-679.

(b)     "Following a failed attempt at mediation, Reaves requested a due process hearing to
which she was entitled by statute." p. 679.

(c)     "Evidence considered by the hearing officer over Reaves's objection included Steele-
Lufcy's letter and the evidence on which it was based" p. 679.

(d)     "Reaves challenges the district court's determination that a preponderance of the
evidence supported the Division's denial of funding." p. 680 (the phrase "determination that a
preponderance of the evidence" necessarily means that it was not done by a Rule 12(b)
Motion to Dismiss).

(e)     "Like the IDEA, the Rehabilitation Act [and, by proxy, the ADA[5]] requires a
reviewing court to receive the records of the state proceedings, before hearing additional
evidence and basing its decision on a preponderance of the evidence." p. 681.

39.     Precisely how much investigation is needed to count as an "individualized inquiry?"

_____

5  See Footnote #3

Where exactly does the statute draw the line? That has yet to be explicitly stated in case law, and probably won't be for another hundred years. But as far as this current pending case is concerned, clearly established precedent makes at least one thing perfectly clear: The Defendants cannot simply decide "symptoms means unqualified" and end the analysis there. And yet, by the Defendants' own admission, that is exactly what they did.

40.    Even if they used some objective medical knowledge[6] to determine that I would, in fact, have difficulty in the areas they so specified, the analysis would not end there. The Defendants must also consider whether any reasonable accommodations could enable me to do the work despite these supposed disabilities. See Radecki v. Joura, 114 F. 3d 115, 117 (8th Cir. 1997) ("[i]f a reasonable accommodation could eliminate the risk, entities covered under [the ADA][7] are required to engage in such accommodation"); see also School Bd. of Nassau Cty. v. Arline, 480 US 273, 288 (1987) ("The next step in the 'otherwise-qualified' inquiry is for the court to evaluate, in light of these medical findings, whether the employer could reasonably accommodate the employee under the established standards for that inquiry"). There is no indication by the Defendant anywhere in the evidence, or in their Motion to Dismiss, that they even so much as considered the possibility of reasonable accommodations.

41.    If you want a suggestion for a reasonable accommodation (although I am not required to give one; that's THEIR job), here is one right here: They are using the fear of my inability to succeed in the *work* force as grounds to refuse, not to assist in finding a job, but to fund any college education efforts. The problem with this logic, which ousts this argument as pretextual, is that college is a four-year-long endeavor. Even if the purpose of college is, ultimately, to get a

---

6  Which would require, at the very least, an in-person examination and analysis, something that never happened. See ¶ 23 of the "Complaint and Jury Demand," a document that, at least for purposes of this motion, is entitled to presumption of truth.

7  See Footnote #3

job at the end of the journey, the journey itself is still so long that, if I were obtaining therapy *while simultaneously* attending college (which they now concede I am capable of doing), a skilled therapist would probably be able to alleviate even the most severe of trauma symptoms within that time.

42.     Bear in mind that this is only a Rule 12(b) Motion to Dismiss, not a jury trial on the merits. Rule 12(b) Motions to Dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 US 41, 45-46 (1957); see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007) (same). Since I have just offered a way I can be entitled to relief, that one hypothetical scenario is all it takes to defeat a Rule 12(b) Motion to Dismiss.

43.     This alone defeats the Defendants' arguments. Even if they could prove that I require theraputic treatment (which they cannot), that does not justify why I can't have that *while attending college*. They now admit that I can be in college without too much difficulty, so they have no excuse for not going that route. The only explanation is that it is pretextual; they do not want to provide me any funding for anything, ever, so they have to come up with some excuse.

44.     Last but not least, I am not the one who must allege facts to show that I am otherwise qualified despite my disabilities; they are required to show the exact opposite. They are alleging a deficiency in my complaint where the legal requirement simply does not exist. See *Automobile Workers v. Johnson Controls, Inc.*, 499 US 187, 200 (1991) ("For the plaintiff to bear the burden of proof [on the question of being otherwise qualified] in a case in which there is direct evidence of a facially discriminatory policy is wholly inconsistent with settled [discrimination] law"). Therefore, in order for them to prevail on this matter, the Defendants must show affirmative evidence to support their claims. Even if they can do that, the case still cannot be disposed of on

a Rule 12(b) Motion to Dismiss, since the Court cannot look beyond the factual allegations of the complaint and, in the case of pro se filings[8], those facts which can be reasonably inferred from the content of the Complaint. Therefore, even if they may prevail, a discovery should be required before they do.

45.    The Defendants' Motion to Dismiss must therefore be denied, as it conflicts with over half a century of clearly established case law.

   **C.    ADA Retaliation Claim**

46.    It is at this point where I must issue the most urgent reminder of the limitations on this Court's power. This court cannot – I repeat, cannot – raise new defenses sua sponte, on the Defendant's behalf (see ¶¶ 2-3 of this Response). This is most important in this section, because it is in this section that I get the biggest feeling the Defendants were hoping that you would do so, since they most likely knew that their arguments were completely meritless; they were probably hoping that the Court would meet them half way, take their outline and flesh it out for them. But the Court cannot do that.

47.    This is perhaps the most blatant evidence that this Motion is being filed solely for the purposes of delay. Their argument can be summed up on the following two sentences:

   (a)    "Plaintiff has not pleaded facts that show he engaged in a statutorily protected activity."

   (b)    "Plaintiff provides no support in his complaint for his conclusory allegation that he was denied ARS's services in retaliation for engaging in an ADA protected activity."

48.    This is why I stress so emphatically the law that the Court cannot create new defenses for the Defendants. Here, the Defendants are arguing, not that my factual allegations are insuffi-

---

8  See Haines v. Kerner, 404 U.S. 520 (1971), holding that the Court should view pro se pleadings liberally.

cient/too circumstantial/too much of a stretch for a jury to reasonably conclude that retaliation took place; instead, they are arguing that there ***are no factual allegations at all***! No rebuttal needed on their end because there is nothing on my end to rebut.

49.     Because the Defendants are only challenging the *existence* of the factual allegations, not their *sufficiency*, this Court is stuck considering *only the existence* of the factual allegations. If the factual allegations are there at all, no matter how "insufficient" they may be, the Defendants' argument must fail.

### 1.     Sufficient facts for protected activity

50.     The Defendants argue that I have not stated any facts to show that I engaged in a protected activity. This is a bald-faced lie and, just like the part about the State being immune from suit for § 1983 claims that they are not even defendants for, merely *reading the Complaint* would cause you to realize that.

51.     ¶¶ 7-11 contain the factual allegations which show that I engaged in a protected activity. The Defendants claim that ¶¶ 7-10 do not contain any history of protected activities, but I never intended for ¶¶ 7-10 to show that. They are just crossing their fingers and hoping that you forget that ¶ 11 also exists.

52.     This is what is known as a "big lie," a lie told when the audience (in this case, the Court) already possesses evidence to the contrary. It differs from a "bald faced lie" because the liar, in the former, is hoping that the audience may actually be fooled, despite already having evidence to the contrary. The goal behind a big lie is to exploit an element of human psyche where the fact that they already have rebuttal evidence may cause them to, rather paradoxically, believe that *they* are the ones with mistaken information, not the speaker. The lie is so mindbogglingly transparent that the audience does not believe the speaker capable of distorting the truth so

blatantly and on such a large scale, and therefore believes the lie despite how astronomical it is.

53.    As an infamous and evil, but nevertheless smart, politician once put it:

> "and thus in the primitive simplicity of their minds they more readily fall victims to the big lie than the small lie ... It would never come into their heads to fabricate colossal untruths, and they would not believe that others could have the impudence to distort the truth so infamously. Even though the facts which prove this to be so may be brought clearly to their minds, they will still doubt and waver and will continue to think that there may be some other explanation. For the grossly impudent lie always leaves traces behind it, even after it has been nailed down, a fact which is known to all expert liars in this world and to all who conspire together in the art of lying."

54.    That is what is happening here. They told a lie that was easily refuted by simply reading the Complaint. Because they *initially* attempted to avoid having to serve me with a copy of the Motion so I couldn't reply to it (see Doc. 18 in this case), that was most likely a part of their strategy in hoping that the Court did not catch on that their lies were easily outed just by doing a quick review of the Complaint.

55.    But be that as it may, their claims are nevertheless without merit. Even if this Court were interested in deciding that ¶ 11 of the Complaint did not give enough detail to label the litigation history as being protected under the ADA, the Court cannot do that until the Defendants raise such a claim in a motion (see ¶¶ 2-3 of this Response). Their claim, instead, was that I did not give any litigation history at all, sufficient or otherwise, and that is simply a lie. Their argument must be rejected.

## 2.    Sufficient facts for causal connection

56.    Next, the Defendants argue that I had have offered "no support" in the complaint for what they call "conclusory allegations" that the denial of services was caused by my statutorily protected activities. This is another big lie which they were hoping to use the ex parte motion (see Doc. 18 for details) to confuse the court on.

57.     If one merely scans the Complaint, they will notice that I have alleged A) that the denial of services was done pursuant to a recommendation from an unnamed "licensed psychological examiner," B) this recommendation contained a list of reasons why he recommended denial of services, and C) my litigation history was featured as an entry on said list. This is clearly evidence of casual connection.

58.     The Defendants do not concede that these allegations are there, but are insufficient to infer a causal connection; instead, they argue that these three allegations *are not in the complaint*. Because that is what the Defendants are arguing, that is what the Court must decide at the exclusion of all other potential arguments (see ¶¶ 2-3 of this Response).

59.     Since their arguments are bald faced lies, the Court must reject them.

### 3.    "Unqualified" excuse

60.     Next, the Defendants attempt to argue that, because they rejected me for being unqualified, that necessarily means that my litigation history did not play a role in their rejection.

61.     First of all, this does not make any sense at all. They say I'm unqualified; however, by their own admission, the only *reason* I am supposedly unqualified is because they get sole discretion to decide whether I am qualified. By their own admission, their own state statutes give themselves permission to consider whatever factors they want – statutorily protected or otherwise – in making this entirely arbitrary determination. That argument is patently frivolous in and of itself (for the reasons already provided in ¶¶ 18-33 of this Response), but it also is completely incomprehensible when viewed alongside the current argument.

62.     The Defendants are essentially stating that the statutes which give them permission to consider my statutorily protected activities are the very thing that make the consideration of those activities impossible. How can someone say that they are allowed to do something, and

said allowance, in and of itself, prevents them from doing so? If anything, having a policy of considering statutorily protected activities would be circumstantial evidence that the activities *were* considered, not that they necessarily *weren't*! At best, the Defendants could argue that they didn't consider my statutorily protected activities, despite being allowed to. But to say that the allowance of consideration is, itself, what renders consideration impossible is simply asinine.

63.     So which is it? Are you allowed to consider protected classes and/or statutorily protected activities? Or did you clearly not consider them at all? Those two arguments cannot both be true at the same time. Pick a defense and stick with it.

64.     Even if the Defendants wanted to argue that they did not consider my statutorily protected activities even though they gave themselves permission to do so (which, to repeat, is in and of itself a frivolous argument; see ¶¶ 18-33 of this Response), in order to have such a factual declaration upheld, we would need litigation. Even if the Defendants wish to change their story, their Rule 12(b) Motion to Dismiss is still meritless and must be denied.

65.     Second, as I have already demonstrated, their half-baked attempt to label me as "unqualified" fails because they never attempted to conduct an individualized inquiry into my specific abilities, or consider the possibility of reasonable accommodations (including, but not limited to, concurrent college and therapy). The only so-called "qualification" they claim I do not meet[9] is, by their own admission, entirely subject to their own arbitrary whim, which is flagrantly in violation of federal ADA law, both in letter and in spirit, as well as the Rule of Law in its entirety. Therefore, their argument that I am "clearly unqualified" is unfounded. Thus, even if it could be used to support a lack fo retaliation, it still fails on the merits.

66.     Third, this argument is frivolous as a matter of law. In order for this argument to make

---

9    ... and therefore (just as a reminder), the only qualification this Court may consider; see ¶¶ 2-3 of this Response.

sense, Sec. 503 of the ADA would have to require that the protected activities be the *sole* reason behind the adverse action. The statute clearly does not require this.

67.    We can safely assume that the lack of said statutory language was intentional on Congress's part. After all, the statute of 29 U.S.C. § 794(a) clearly includes the language "solely by reason of disability;" if the Rehabilitation Act can have this language, why can't the ADA?[10]

68.    Even if the Defendants might have reasonably believed (due to their pompous belief that they are above the law as described in ¶¶ 18-33 of this Response) that they had a legitimate reason for denying me services, the bottom line is that my litigation history was still a co-motive. That is all I need to recover under Sec. 503 of the ADA.

69.    Therefore, the Defendants' attempt at creating pretext is frivolous.

### D.    First Amendment Retaliation Claim

70.    The Defendants argue that the grounds for dismissal of the First Amendment Retaliation claim are the same as for dismissal of the ADA Retaliation claim. In their own words, "These elements [for § 1983 retaliation] are identical to the elements necessary to establish retaliation under the ADA."

71.    For the most part, that means I can simply repeat the arguments made in ¶¶ 46-69 (including, and especially, the part where the Court cannot raise new defenses sua sponte in order to bail out the Defendants). ¶¶ 7-11 show that I have engaged in protected activities. The Defendants listed my litigation history one of the reasons behind their adverse action.

72.    However, there is one thing that deserves separate mention: The legal question of whether the protected activity must be the *sole* motive behind the adverse action is much clearer on the issue of 1st Amendment retaliation. With §503 of the ADA, I am mostly relying on the fact that a

---

10 As stated in Footnote #3, 42 U.S.C. § 12201(a) requires identical construction between the two statutes "[e]xcept as otherwise provided." This is one such instance where the plain text of the statute unequivocally compels a different construction.

similar statute (the Rehabilitation Act) contains language that the ADA does not have. But with 42 USC §1983, case law makes it explicit that a plaintiff can indeed recover even when retaliation is merely a co-motive.

73.      Dozens of published opinions from the 8th Circuit state that, to recover under a claim of First Amendment Retaliation, all a plaintiff needs to show is that "the adverse action was motivated *at least in part* by the exercise of the protected activity" (emphasis added). See Carroll v. Pfeffer, 262 F. 3d 847, 850 (8th Cir. 2001); see also Naucke v. City of Park Hills, 284 F. 3d 923, 928 (8th Cir. 2002); see also Revels v. Vincenz, 382 F. 3d 870, 876 (8th Cir. 2004); see also Williams v. City of Carl Junction, Mo., 523 F. 3d 841, 843-844 (8th Cir. 2008) (arguing that the circumstantial evidence of motive is still sufficient evidence to proceed, even if the adverse actions, taken in a vacuum, were otherwise backed by probable cause); see also L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo., 673 F.3d 799, 807-08 (8th Cir. 2012); see also Beaulieu v. Ludeman, 690 F. 3d 1017, 1025 (8th Cir. 2012); see also Spencer v. Jackson County, Mo., 738 F. 3d 907, 911 (8th Cir. 2013); see also Greenman v. Jessen, 787 F. 3d 882, 891 (8th Cir. 2015); see also Bennie v. Munn, 822 F. 3d 392, 397 (8th Cir. 2016); see also Saylor v. Nebraska, 812 F. 3d 637, 645 (8th Cir. 2016)

74.      Thus, the Defendants' argument that they had a legitimate motive (which they don't; see ¶¶ 18-33 & ¶¶ 46-69 of this Response) for the denial of services exonerates them of any retaliatory co-motive is still frivolous. It is even more frivolous than with the ADA retaliation claim.

## CONCLUSION

75.      The Defendants are not immune from suit; that immunity has been taken away by Congress for the claims that the State is even a defendant for in the first place, and Amy Jones never had immunity to begin with. The Defendants have not offered any qualification I

supposedly do not meet except "because we *say* you don't qualify." They do not get sole

discretion as a matter of law to determine if someone is qualified, and their ridiculous attempts to

subvert this clearly established federal law by offering state law in complete disregard to Article

6, Section 2 of the U.S. Constitution is probably the most frivolous legal argument in US history.

The Defendants are pretending that factual allegations for retaliation do not exist when they

clearly do (and therefore, the Court cannot bail them out by instead testing the allegations'

*sufficiency*; only their *existence*), and they argue that retaliation must be the sole motive behind

their acts, when that is clearly not the law.

76.    Wherefore, premises considered, I respectfully request that the Defendant's Motion to

Dismiss be denied, and any other relief to which I may be entitled.

So requested on this, the 2nd day of December, 2016.

                                            David Stebbins
                                            123 W. Ridge St.,
                                            ATP D
                                            Harrison, AR 72601
                                            870-204-6516
                                            stebbinsd@yahoo.com

## CERTIFICATE OF SERVICE

I, *pro se* Plaintiff David Stebbins, certify that the Defendants have been served with a
copy of this filing pursuant to FRCP 5(b)(2)(E).

                                            David Stebbins
                                            123 W. Ridge St.,
                                            ATP D
                                            Harrison, AR 72601
                                            870-204-6516
                                            stebbinsd@yahoo.com