## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

DAVID A. STEBBINS                                              PLAINTIFF

V.                              No. 4:16CV00545-JM-JTR

STATE OF ARKANSAS,
ARKANSAS REHABILITATION SERVICES,
and AMY JONES                                                 DEFENDANTS


## RECOMMENDED PARTIAL DISPOSITION

The following Recommended Partial Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

In his *pro se* Complaint, Plaintiff David A. Stebbins ("Stebbins") asserts discrimination and retaliation claims, under the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983, against the State of Arkansas, Arkansas

1

Rehabilitation Services ("ARS"), and Amy Jones, manager of the Northwest Arkansas division of ARS ("Jones"). *Doc. 2*.

Stebbins alleges that Defendants discriminated against him based on his disabilities, in violation of Title II of the ADA, by denying his request for funds to attend college.[1] He also argues that Defendants' denial of his funding request was in retaliation for his multiple disability-discrimination lawsuits, in violation of the "anti-retaliation" provision of the ADA.[2] Finally, Stebbins asserts a § 1983 claim against Defendant Jones, arguing that, by denying his request for funding, she retaliated against him for exercising his First Amendment right to engage in protected activity, *i.e.*, his disability-discrimination litigation history.

Defendants have filed a Motion to Dismiss and a Brief in Support. *Docs. 15, 16*. Stebbins has filed a Response. *Doc. 23*.

Stebbins has filed a Motion for Partial Summary Judgment, a Brief in Support, and a Statement of Facts. *Docs. 25, 26, 27*. Defendants have filed a Response. *Docs.*

---

[1]Title II of the ADA, the "public services" provision, prohibits public entities from excluding qualified disabled individuals from, or denying them the benefits of, services, programs or activities by reason of their disabilities, or otherwise discriminating against them. 42 U.S.C. § 12132.

[2]Title V of the ADA prohibits discrimination against an individual who has "opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [the ADA]." *Id.* § 12203(a).

*28, 29*. Stebbins has filed a Reply. *Doc. 30*.

Thus, the issues are joined and ready for disposition.[3]

Before reaching the merits of the parties' Motions, it is important to understand the factual allegations in Stebbins's Complaint, all of which must be accepted as true in resolving Defendants' Motion to Dismiss.[4]

1.    Stebbins is a resident of Harrison, Arkansas. When he was in the fifth grade, he was diagnosed with Asperger Syndrome, a disability which hinders his ability to socialize with others, make friends, and obtain employment. *Doc. 2 ¶¶ 7, 12*.

2.    In April 2015, he was diagnosed with post-traumatic stress disorder and severe depression. *Id. ¶ 12*.

3.    Stebbins has represented himself in at least eight cases seeking reasonable accommodations for his disabilities.[5] *Id. ¶¶ 8-11*.

---

[3]The case has been referred to the undersigned United States Magistrate Judge for consideration and determination of all pretrial matters and for recommended disposition of any dispositive matters. *Doc. 47*. Judge Moody has stayed discovery in the case, and all Rule 26(f) deadlines, pending a final ruling on Defendants' Motion to Dismiss. *Doc. 44*.

[4]When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of the factual assertions made in the plaintiff's pleadings. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

[5]Paragraph 11 of the Complaint lists the following federal cases: *Stebbins v. Richardson, et al.*, W.D. Mo. No. 6:10cv03305-RED (ADA); *Stebbins v. Mid States Promotions, et al.*, W.D.

4.     Defendant ARS is a state agency that provides rehabilitation services to disabled individuals, including funding to attend college.[6] *Id. ¶¶ 13, 14.*

5.     Defendant Jones is the manager of the Northwest Arkansas division of the ARS, which includes Harrison. *Id. ¶ 13.*

6.     In November 2015, Stebbins submitted an application, in the ARS office in Harrison, for funding so that he could enroll at Arkansas Tech University in Russellville, Arkansas, where he intended to major in computer science or information technology. *Id. ¶ 15.*

7.     In his funding request, Stebbins sought $5,300 per year for tuition, room and board, and textbooks. He also sought $11,038 per year in "extra funding" to cover additional expenses for on-campus housing, summer classes, and moving costs. *Id. ¶¶ 14, 17.*

8.     Stebbins previously had taken classes at North Arkansas College in

---

Ark. No. 3:10v03041-JLH (ADA); *Stebbins v. University of Ark.*, *et al.*, W.D. Ark. No. 5:10cv05125-JLH (Rehabilitation Act and First Amendment); *Stebbins v. Wal-Mart Stores, Inc.*, W.D. Ark. No. 3:10cv03086-RTD (Rehabilitation Act); *Stebbins v. Full Sail Univ.*, W.D. Ark. No. 3:10cv03072-JLH (ADA and Rehabilitation Act); *Stebbins v. Harp & Assoc. Real Estate Svcs.*, W.D. Ark. No. 3:11cv03078-PKH (Rehabilitation Act); *Stebbins v. Legal Aid of Ark.*, W.D. Ark. No. 3:11cv03057-PKH (ADA); *Stebbins v. Hannah, et al.*, E.D. Ark. No. 4:15cv00436-JLH (ADA).

[6]ARS provides "rehabilitation services … to eligible physically or mentally disabled individuals and those who can benefit from vocational rehabilitation and independent living services, as determined by the agency to be eligible therefor." Ark. Code Ann. § 25-30-203(a).

Harrison, where he earned good grades. According to one of his teachers, Stebbins was a "very successful mathematics student," had an "innate sense of logic, order, and patterns," and would "excel" in the field of computer science. *Id. ¶ 16*.

9.      While Stebbins's funding request was pending, Defendant ARS asked Stebbins to release his medical records for the past three years. *Id. ¶ 21*.

10.      Stebbins provided release forms for his medical records from: (a) a hospital visit to St. Bernard's Health Center in Jonesboro, Arkansas; and (b) a follow-up visit to Health Resources of Arkansas, in Harrison. *Id. ¶¶ 21, 22*.

11.      About thirty days after applying, Stebbins received notice that his request had been rejected and that Defendant Jones had ordered his case closed.[7] *Id. ¶¶ 19, 20*.

12.      Defendants used Stebbins's medical records to deny his funding request. *Id. ¶ 22*. One of the stated reasons for rejection was that Defendants' licensed psychological examiner had "recommended that [Stebbins] obtain a therapeutic relationship to alleviate the symptoms they feel would interfere with

---

[7]For purposes of the Motion to Dismiss, Stebbins's characterization of the "rejection papers" is accepted as true. The Court notes that Stebbins's allegations are consistent with exhibits he attached to his Motion for Partial Summary Judgment, including: (1) a letter from Defendant Jones, dated December 17, 2015, that his request for ARS services had been denied; and (2) a Rehabilitation Initial Diagnosis and Assessment, dated December 15, 2015, and signed by Leslie S. Johnson, a licensed psychological examiner. *Doc. 25, at 5-7*.

[Stebbins's] vocational efforts." *Id.* *¶ 22*.

13.   Stebbins never spoke with, and was never examined by, Defendants' "licensed psychological examiner." *Id.* *¶ 23*.

14.   The "rejection papers" also stated:

A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. <u>Causes of action were mainly civil rights and discrimination</u>.

*Id.* *¶ 24*.

15.   The "rejection papers" also contained a "list of ways in which [Stebbins's] observed or reported problem areas are likely to be manifested in a vocational setting," including impulsivity, depression, difficulty assessing consequences of decisions, difficulty relating with others, difficulty performing work tasks involving people, difficulty changing behavior to meet requirements, emotional intensity, and conflicts. *Id.* *¶ 24*. These "problem areas" are all symptoms of Stebbins's disabilities. *Id.* *¶ 26*.

16.   Defendant ARS made no effort to determine if, in fact, Stebbins's disabilities would interfere with his educational success. Instead, it based its decision on "speculation and conjecture." *Id.* *¶¶ 25, 31*.

17.   Defendant ARS did not consider whether reasonable accommodations could be made for Stebbins's disabilities. *Id.* *¶¶ 25, 57*.

18.     Because of Defendants' actions, Stebbins has been unable to enroll in college, thereby delaying his entry into the workforce. *Id.* ¶¶ *32, 33.*

## II. Discussion

### A.     Sovereign Immunity as a Bar to Stebbins's ADA Title II Claim and Retaliation Claim

Defendants argue that Stebbins's ADA claims are barred by sovereign immunity, citing *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999). *Doc. 16, at 4-5*. In *Alsbrook*, the Eighth Circuit held that, despite Congress's clear intention in enacting the ADA,[8] Title II of the ADA did *not* validly abrogate Arkansas's Eleventh Amendment immunity from private suit in federal court.

*Alsbrook's* holding has been substantially eroded by subsequent United States Supreme Court decisions holding that, in certain circumstances, Congress *has validly abrogated* the States' Eleventh Amendment immunity in suits brought under Title II of the ADA. *United States v. Georgia*, 546 U.S. 151, 157-59 (2006) (Title II validly abrogates sovereign immunity for conduct that also violates the United States Constitution, as made applicable to the States through the Fourteenth Amendment);

---

[8]*See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").

*Tennessee v. Lane*, 541 U.S. 509, 531, 533-34 (2004) (Title II validly abrogates sovereign immunity for claims that disabled people are being denied the fundamental constitutional right of access to the courts); *see Klingler v. Director, Dept. of Revenue*, 455 F.3d 888, 892 (8th Cir. 2006) (*Georgia's* holding "appears inconsistent with the approach we took in *Alsbrook*" and "we are no longer confident that *Alsbrook* ... can serve as [a] reliable bas[i]s for resolving the plaintiffs' claims for money damages").

According to *Georgia*, whether sovereign immunity has been abrogated in a particular case raising ADA Title II claims must be determined on a "claim-by-claim basis," requiring a three-step analysis. First, the Court must identify which aspects of the State's alleged conduct violated Title II of the ADA. Next, the Court must determine to what extent that conduct also violated the Constitution. Finally, if the State's conduct violated *only* the ADA (and not the Constitution), the Court must determine whether Congress's abrogation of sovereign immunity as to that class of conduct is nevertheless valid.[9] *Georgia*, 546 U.S. at 159.

Under *Georgia*'s framework, the question of sovereign immunity is "avoided

---

[9]This third step, in turn, requires application of the test set forth in *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997) (valid abrogation requires "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end").

altogether" if the Court determines that the ADA claim fails on the merits. *Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014); *see Johnson v. Neiman*, 504 F. App'x 543, 545-46 (8th Cir. 2013) (court "need not address" sovereign immunity issue if summary judgment record establishes that the plaintiff has no valid Title II claim). This furthers the "fundamental and longstanding principle of judicial restraint that courts [should] avoid reaching constitutional questions in advance of the necessity of deciding them." *Buchanan v. Maine,* 469 F.3d 158, 172-73 (1st Cir. 2006) (district court erred in reaching Eleventh Amendment immunity issue where summary judgment record established there was no Title II violation).[10]

The *Georgia* framework also applies when determining whether the ADA's anti-retaliation provision was a valid abrogation of sovereign immunity. *Lors*, 746 F.3d at 864. As with Title II, the sovereign immunity question may be avoided if the Court determines that the retaliation claim fails on its merits.

Accordingly, before reaching the sovereign immunity question, the Court must first address the merits of Stebbins's ADA claims.

_____

[10]S*ee also Mary Jo C. v. New York State & Local Retirement System,* 707 F.3d 144, 152 (2d Cir. 2013) ("[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end."); *Hale v. King*, 642 F.3d 492, 504 & n.38 (5th Cir. 2011) (court must determine whether the plaintiff states a valid Title II claim before considering any claim of sovereign immunity); *Bowers v. NCAA,* 475 F.3d 524, 553 & n.31 (3d Cir. 2007) (before considering sovereign immunity issue, the court must determine, "in the first instance," whether any basis exists for a Title II claim).

1.    **ADA Title II Claim**

To state a disability discrimination claim under Title II of the ADA, Stebbins must show that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the entity; and (3) such exclusion, denial or discrimination was "by reason of" his disability. *Folkerts v. City of Waverly,* 707 F.3d 975, 983 (8th Cir. 2013); *see* 42 U.S.C. § 12132. Under Title II, a "qualified individual with a disability" is a person "who, with or without reasonable modifications to rules, policies, or practices … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities by a public entity." 42 U.S.C. § 12131(2).

Defendants concede that Stebbins has "disabilities." *Doc. 16, at 10.* However, they argue that he is not a "qualified" individual with a disability, as required by Title II, because he does not meet the "essential eligibility requirements" for receiving services from Defendant ARS. *Id. at 7-8.*

In support of this argument, Defendants rely on Ark. Code Ann. § 25-30-201(a), which states:

> The policy and scope of [ARS] shall be to provide increased employment of individuals with disabilities through the provision of individualized training, … educational and support services, and

> meaningful opportunities for employment in integrated work settings
> to maximize employment, economic self-sufficiency, independence,
> and inclusion and integration into society.

They also cite Ark. Code Ann. § 25-30-203(a), which states that ARS provides services to "eligible physically or mentally disabled individuals and those who can benefit from vocational rehabilitation and independent living services, as determined by the agency to be eligible therefor." Finally, they cite Ark. Code Ann. § 20-79-213(a)(1), which states that ARS services are provided to disabled individuals "whose rehabilitation the Director of [ARS] determines, after full investigation, can be satisfactorily achieved."

According to Defendants, these statutes make it clear that "only those individuals who are likely to succeed in the workforce are eligible for assistance from ARS" and "the determination of whether an individual is likely to succeed in the workforce is solely within the discretion of ARS." Thus, Defendants argue that, because ARS's "investigation" of Stebbins "revealed that [he] exhibited symptoms that 'would interfere with [his] vocational efforts,'" he was not "qualified" to receive vocational benefits from Defendant ARS. *Doc. 16, at 7-9*.

In response, Stebbins argues that leaving the "qualified individual" determination to the sole discretion of Defendant ARS makes its decision "entirely non-reviewable" and permits the agency to deny services for any reason, including

11

discrimination against a disabled individual or in retaliation for a protected activity, both of which violate the ADA. *Doc. 23, at 6-8.* According to Stebbins, Defendants' denial of his funding request was *explicitly predicated* on symptoms of his disabilities *and* on his disability-discrimination litigation history. Stebbins also argues that, before denying services to him, Defendants failed to adequately investigate his circumstances or make an "individualized inquiry." Finally, Stebbins argues that Defendants failed to consider whether any reasonable accommodations could enable him to meet the ARS requirements despite his disabilities. For example, he suggests that ARS could provide benefits for him to begin college, but allow him to simultaneously participate in therapy in an effort to alleviate the symptoms that ARS claims could interfere with his vocational success. *Id. at 12-17.*

In ADA cases, rather than simply deferring to an entity providing the service in question and deeming its eligibility rules to be "sacrosanct," a reviewing court must undertake "an independent analysis of … the importance of an eligibility requirement for a public program or benefit." *Mary Jo C.,* 707 F.3d at 159 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001)); *see Class v. Towson Univ.*, 806 F.3d 236, 253-54 (4th Cir. 2015) (Wynn, J., concurring in part and dissenting in part) ("[I]t is inconsistent with the ADA to elevate the unilateral approval of the entity accused of discrimination to the status of an essential eligibility

requirement[.]"). Furthermore, the United States Supreme Court has cautioned against defining the scope of a public benefit "in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Thus, in determining whether Stebbins is a "qualified individual with a disability" for Title II purposes, the Court is not bound by Defendant ARS's determination that he was not "qualified" to receive its benefits.

Moreover, the "qualified individual" inquiry does not end even if the Court accepts Defendants' contentions that "likelihood of success in the workforce" is an "essential requirement" for obtaining benefits from ARS *and* that Stebbins failed to meet that requirement. Title II defines a "qualified individual with a disability" as a person who meets the public entity's essential eligibility requirements *"with or without reasonable modifications.*" 42 U.S.C. § 12131(2) (emphasis added). Thus, "by the express words of Congress, it is not necessary for a person to meet all eligibility requirements. Instead, if a proposed modification of those requirements is 'reasonable,' a person can be a 'qualified individual.'" *Pottgen v. Missouri State High School Activities Ass'n*, 40 F.3d 926, 932 (8th Cir. 1994) (Arnold, C.J., dissenting).

Finally, it is clear that, under Title II, a discrimination claim can be based on

13

disability-based disparate treatment *or* on a failure to make reasonable accommodations for a disability. *Folkerts*, 707 F.3d at 983-84; *see* 28 C.F.R. § 35.130(b)(7) (a public entity "shall make reasonable modifications" in its policies or practices when "necessary to avoid discrimination on the basis of disability" unless it "can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity").

The Court concludes that, at this stage of the proceeding, Stebbins has alleged sufficient facts to state a plausible discrimination claim under the ADA. Specifically, he alleges: (1) he has disabilities, has earned "good grades" in college courses thus far, and wishes to pursue a degree in a vocational field in which he has the potential to "excel"; (2) Defendants denied his request for funds to attend college to pursue that degree; (3) the denial was explicitly predicated, at least in part, on symptoms of his disabilities; and (4) before denying his request, Defendants did not consider whether any reasonable accommodations could be made for his disabilities.[11]

## 2.    ADA Retaliation Claims

A *prima facie* case under the ADA's anti-retaliation provisions requires

---

[11]In support of dismissal, Defendants cite *Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 675 (8th Cir. 2005). However, *Reaves* was a decision reached on summary judgment after development of the facts, not on a motion to dismiss for failure to state a claim.

Stebbins to show that: (1) he engaged in a statutorily protected activity; (2) an adverse action was taken against him; and (3) a causal connection exists between the adverse action and the protected activity. *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1025 (8th Cir. 1999).

Defendants argue that Stebbins's allegations about protected activity are "vague," and that, in any event, he was denied services because he was ineligible for them, not in retaliation for engaging in any protected activity. *Doc. 16, at 11-12.*

According to Stebbins's Complaint: (1) he has litigated at least eight cases claiming that he has not received reasonable accommodations for his disabilities; (2) Defendants denied his funding request; and (3) Defendants' denial *explicitly referred to his litigation history* as one the reasons for its decision. At this stage of the proceedings, the Court concludes that these allegations are sufficient to state a plausible retaliation claim under the ADA.

### 3.    Conclusion

Stebbins's allegations state plausible claims for relief under Title II, the Fourteenth Amendment, and the anti-retaliation provisions of the ADA. Accepting the allegations in the Complaint as being true, as the Court is required to do at this stage of the case, the State of Arkansas and Defendant ARS are not entitled to invoke sovereign immunity as a bar to Stebbins's claims. *See United States v. Georgia,* 546

15

U.S. at 159.

Accordingly, the Court recommends that Defendants' Motion to Dismiss Stebbins's ADA claims be DENIED.

**B.      Stebbins's § 1983 Retaliation Claim**

Defendants argue that: (1) Stebbins's § 1983 retaliation claim is barred by sovereign immunity; and (2) the claim is without merit. *Doc. 16, at 5-6, 12-14*.

Stebbins has clarified that his § 1983 claim is *only* against Defendant Jones. *Doc. 23, at 5-6; see Doc. 2, at 1, 10-11*. However, Stebbins never specifies whether he is suing Defendant Jones in her individual or official capacity. In such circumstances, it is presumed, as a matter of law, that Defendant Jones is being sued only in her official capacity. *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("absent a clear statement" that officials are being sued in their individual capacities, complaint is interpreted as including only official-capacity claims).

A suit for damages under § 1983 cannot be brought against a state official in his or her official capacity. *Id.* at 754 (§ 1983 damages claims against state defendants in their official capacities are "barred, either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)). Thus, Stebbins's § 1983 claims against Defendant Jones for damages must be dismissed.

16

However, the law is clear that a state official may be sued, in his or her official capacity, for prospective injunctive relief without violating the Eleventh Amendment. *Id.* at 754; *Monroe v. Arkansas State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007) (citing *Ex Parte Young,* 209 U.S. 123 (1908)). Thus, Stebbins's § 1983 claims for injunctive relief against Defendant Jones, alleging retaliation under the First Amendment, are *not* barred by sovereign immunity.

To establish a First Amendment retaliation claim under § 1983, Stebbins must show that: (1) he engaged in a protected activity; (2) he suffered an adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated "at least in part" by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). As with Stebbins's ADA retaliation claim, he has alleged sufficient facts to state a plausible claim for retaliation under § 1983.

Accordingly, the Court recommends that Defendants' Motion to Dismiss Stebbins's § 1983 claim be DENIED as to his claim for prospective injunctive relief against Defendant Jones in her official capacity, but GRANTED as to his claims for damages against her.

**C.     Stebbins's Motion for Partial Summary Judgment**

Stebbins has filed a Motion for Partial Summary Judgment "on the issues of liability." *Doc. 25, at 2*. Defendants contend that Stebbins's Motion is premature due to the pending sovereign immunity issue and the fact that no discovery has been undertaken. They also reiterate their arguments that Stebbins has failed to state a claim for which relief can be granted. *Doc. 28*.

As discussed above, the Court concludes that Stebbins has stated: (1) a disability discrimination claim under Title II of the ADA; (2) a retaliation claim under the ADA; and (3) a First Amendment retaliation claim under § 1983. However, that does not mean he is entitled to judgment as a matter of law on any of those claims. No discovery has been conducted, the record is not yet fully developed, and a host of undeveloped factual questions still exist.[12]

At this stage of the proceedings, this case is not appropriate for summary judgment.

---

[12]*See, e.g., Georgia*, 546 U.S. at 159-60 (remanding for factual development of Title II claims); *School Board of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 287–89 (1987) (resolution of whether individual was "otherwise qualified" requires "further findings of fact"); *Mary Jo C.*, 707 F.3d at 153 (whether a particular modification is "reasonable" is a "factual issue" that involves a "fact-specific, case-by-case inquiry"); *Bowers*, 465 F.3d at 536-37 (factual issues exist as to whether plaintiff was a "qualified individual with a disability"); *Revels*, 382 F.3d at 876 (in First Amendment retaliation case, causation is generally a question for the fact-finder); *Pottgen*, 40 F.3d at 930-31 (determining whether, under Title II, an individual meets "essential eligibility requirements" with or without modification requires a reviewing court to make an "individualized inquiry").

### III. Conclusion

For the reasons set forth above, IT IS THEREFORE RECOMMENDED that:

1.      Defendants' Motion to Dismiss, *Doc. 15*, should be DENIED in part and GRANTED in part as follows:

(a)      Stebbins's disability-discrimination and retaliation claims under Title II and Title V of the ADA should be allowed to PROCEED;

(b)      Stebbins's § 1983 retaliation claim against Defendant Jones for prospective injunctive relief should be allowed to PROCEED;

(c)      Stebbins's § 1983 claim against Defendant Jones for damages should be DISMISSED; and

2.      Stebbins's Motion for Partial Summary Judgment, *Doc. 25,* should be DENIED, WITHOUT PREJUDICE.

DATED THIS 20th DAY OF June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE