FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 12 2017

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                  PLAINTIFF

VS.                      CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES         DEFENDANTS

## BRIEF IN SUPPORT OF MOTION IN LIMINE

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits his first Brief in Support of Motion in Limine in the above-styled action.

While considering this motion, please remember that this Court cannot issue orders without giving an explanation as to why he is ruling the way he is. I have already given numerous case laws and binding precedents showing this, so I should not have to re-state them here.

### FACTS

1. I am currently suing the Defendants in this case for denying me funding for college, and basing this denial explicitly on my ADA discrimination litigation history and existing symptoms from disabilities. See **Doc. 2**.

2. In reaching their decision that I am not likely to succeed in the workforce, the Defendants, by their own admission, never examined me personally. By their own admission, the determination that I cannot succeed in the workforce was based on zero personal observations. See **Exhibit 1**.

3. The Defendants argue that my case called for a deviation from the rules and procedures contained in Exhibit 2 because they believed that not examining me in-person was necessary for Dr. Leslie Johnson's safety. See **Exhibit 1**.

4. Despite citing a safety need as an excuse to resort to speculation when gauging my ability

to succeed in the workforce, they never articulate exactly what I said and/or did that caused them to fear for their physical safety ... only citing some unspecified "behavior." See **Exhibit 1**.

## LAW AND DISCUSSION

5. For the following reasons, the Defendants should not be allowed to have any witness testify on their behalf about whether or not I am likely to succeed in the workforce.

6. Before we continue, let me make one thing perfectly clear, so there is no confusion going in. This motion seeks a ruling on the defendants' *procedural* due process rights, not their *substantive* due process rights. In other words, this motion seeks a ruling on the *admissibility* of evidence, not whether they were justified in, or had a good reason for, making the snap judgments they made about me without examining me in-person. Even if they have a good reason (more on that when we get to Sub-Section 3), that doesn't make their speculation admissible.

7. With that said, let us move onto the legal reasons why this testimony should not be admissible:

### Sub-Section 1: Ban on speculative testimony

8. To be competent to testify as a witness, that witness must have "personal knowledge" of the things he is testifying about. See Federal Rule of Evidence #602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

9. By the Defendant's own admission, they do not know personally whether or not my symptoms will interfere with my vocational efforts. The only thing they know for certain is ... that I have these symptoms. Initially, in this case, the Defendants argued that this was all they needed to conclusively determine that I cannot succeed in the workforce. See **Docs. 15 & 16**.[1]

---

[1] "Plaintiff alleges that Defendants' articulation of the above symptoms as reasons he would not benefit from ARS services, is an 'open confession' that they discriminated against him ... these symptoms are illustrative of why Plaintiff could not ... succeed in the workforce." See *Doc. 16, Page 9*.

Also **Doc. 28**[2]. However, this Court has already rejected that argument and found that the existence of my symptoms, by itself, is not sufficient as a matter of law to justify my exclusion from their program. See **Docs. 51**[3] **& 55**. If that were all they needed as a matter of law, then they would have "personal knowledge" that I have these symptoms. But as this Court has already determined, that isn't good enough. Instead, they used these symptoms to reach the purely-speculative conclusion that I cannot succeed in the workforce, which is not based on personal knowledge.

10. Therefore, it is not admissible under Rule of Evidence 602. And if it's not admissible, then they cannot use it in their defense, even if it might exonerate them of discrimination if they *were* allowed to use it. If that means they lose the case because they can't use the evidence which exonerates them, then that means they lose the case. It's as simple as that.

11. Granted, Rule of Evidence 602 explicitly states that an exception is made for expert testimony under Rule 703. Since Leslie Johnson is a licensed psychological examiner, she would likely qualify as an expert witness. So to know if that exception applies, we have to take a look at the language of Federal Rule of Evidence 703.

12. Rule 703 requires that, for expert opinions to be admissible, these opinions must be based on one of two things: Either A) facts or data in the case that the expert has been made aware of, or B) facts or data in the case that the expert personally observed. Either is sufficient, but both are clearly absent in this case.

13. First of all, we have already established that my inability to succeed in the workforce is not based on any personal observations. The Defendants have now openly admitted to that. So

---

[2] "Attached to Plaintiff's Motion for Summary Judgment are a number of documents that support ARS's determin-ation that Plaintiff was not qualified to receive its services, including the recommendation of a Licensed Psycho-logical Examiner that Plaintiff be referred to a local mental healthcare provider" See *Doc. 28, Paragraph 13*.

[3] "The Court concludes that, at this stage of the proceeding, Stebbins has alleged sufficient facts to state a plausible discrimination claim ... (3) the denial was explicitly predicated, at least in part, on symptoms of his disabilities" see *Doc. 55, Page 14*.

we can safely assume that basing the opinion off "personal observations" is out of the question.

14. Alternatively, the expert witness can base her opinions on facts or data that was brought to her attention. However, as we've been discussing, Dr. Johnson based her opinion of my inability to succeed in the workforce solely on the existence of a handful of symptoms. Even if Dr. Johnson might be forming a reasonable opinion in any other aspect of law, the bottom line is that ***this court has already determined*** that the mere existence of these symptoms does not, by itself, necessarily equate to being unable to succeed in the workforce! This court has already determined that it is not enough to simply say "symptoms means unqualified" and end the analysis there! Even if her assessment of my medical records without in-person observations might have held up in any other case (such as ... for instance, personal injury torts), it is explicitly not enough here. Maybe something such as complete blindness might be an automatic bar to doing a job that requires you see what you're doing (e.g. flying a plane), but mere "impulsiveness" or "emotional intensity" is not an absolute bar to performing any job at all; this court has already ruled in my favor on that issue.

15. Therefore, this exception is lost. The Americans with Disabilities Act, by the express word of Congress, has more stringent evidenciary standards than most other fields of law, and so any expert opinion testimony must be based on an individualized assessment. An individualized assessment requires personal observations, something that, by the Defendants' own admission, were not obtained before denying my application for funding.

16. Therefore, any statements – including expert testimony – that show that I am not likely to succeed in the workforce would automatically be inadmissible under the "calls for speculation" objection. Therefore, I ask that this Court nip this in the bud right now, so there is no confusion later on. I ask that the Court order that the Defendants introduce no testimony that I cannot

succeed in the workforce unless they can show that it is based on personal knowledge.

17.   Of course, the Defendants have attempted to offer an excuse why they resorted to speculation on my ability to succeed in the workforce when it is normally their policy to conduct an in-person investigation.

### Sub-Section 2: Defendants' attempt to justify their speculation

18.   The Defendants have attempted to cite a safety concern as an excuse why they did not examine me in-person. I will get to the shabbiness of their excuse in a minute, but right now, I'd like to make it clear that, even if this is true, it still does not cause otherwise inadmissible testimony to suddenly become admissible.

19.   Remember, this is a question of *procedural* due process, not *substantive* due process. I made that distinction early on, and it is very important here.

20.   Suppose, for a minute, that Amy Jones denied my application for funding *because* of the supposed threats I made. Instead of using that to bypass in-person psychological evaluations, she instead used that to outright disqualify my application, independent of how qualified I might have been otherwise.

21.   If I sued for First Amendment Retaliation, claiming that I did not threaten her and she only took my grouchiness and lack of patience as threats, Amy Jones would absolu-tely be permitted to testify about the threats I supposedly made to her. The ARS unquestionably has the right to protect themselves from reasonable threats of harm, and threats of violence are not protected by the First Amendment. This is a "substantive" right of hers.

22.   However, the difference there is that her testimony of the relevant facts would still be based on personal knowledge. I was talking to her over the phone, and I said something over the phone that she construed as a threat. Whatever she construed as a threat, she heard it with her

own ears. That is a personal observation. At that point, it would simply be a matter of hearing exactly what she claims was said to her and seeing if those statements amounted to a threat as a matter of substantive law.

23. If, however, Jones decided to disqualify my application, not because she heard me say a threat herself, but because somebody else informed her that I have a tendency to make threats when I don't get what I want, and I sued her then, Amy Jones would not be allowed to testify about my threatening nature. Such testimony would be hearsay. To support her defense, she would need the testimony of the original declarant.

24. That right there is *procedural* law, and the mere fact that she was acting consistent with her *substantive* rights does not override the *procedural* law for the admission of evidence.

25. Likewise, in the current case here in the real world, the Defendants merely used their belief that my "behavior" (whatever they mean by that) was construed as a presenting a safety risk as an excuse to make a snap judgment about me based on nothing but pure speculation. Even if they were acting consistently with their substantive rights, that does not give them an excuse to introduce evidence that is simply not admissible due to it being based on pure speculation. I should not be made to suffer prejudicial evidence (testimony that is not based on personal knowledge or personal observations) just because they got a little butthurt over how agitated I was over the phone.

### Sub-Section 3: Requirement to Show Compelling Evidence

26. If this Court disagrees with the arguments contained in Paragraphs 19-26 of this Brief ... even if the Court decides that speculative testimony should be allowed if the speculative nature of the evidence was necessary to prevent physical harm to the witness or others (something which has absolutely no arguable basis in law, even as-is), the analysis should not end there. Just

like with any other free speech restriction, the government should not be allowed to simply *claim* that it was a safety concern and then instantly be allowed to subject me to the prejudicial testimony. They should have extraordinarily good reasons for doing so if the evidence is to be admissible despite being speculative.

27.     As you can see from Exhibit 1, the Defendants' only excuse for deciding that skipping the in-person evaluation was a necessary safety precaution was ... my behavior. What behavior, exactly? Who cares! Just ... my "behavior."

28.     If they're going to try and justify purely speculative testimony that is not based on any in-person observations, they should have to show some darn compelling evidence that it was absolutely necessary. Simply mentioning my "behavior" will never be good enough to support a claim that you felt threatened.

29.     While I admit that I was a wee bit agitated at the bureaucratic inefficiency of the ARS and the time it took to process my application, there's a big difference between being grouchy and issuing a threat! An absolutely enormous difference!

30.     In the already rare event that this Court wishes to create an exception that does not exist in law, and hold that speculative testimony is admissible when the speculative nature of the evidence was a necessary safety precaution, the Defendants should have to A) state with specificity what exactly I said or did that they construed as a threat, and B) demonstrate how these words or actions actually amount to a threat as a matter of law.

31.     When satisfying the second of those two elements, the Defendants and the Court should be mindful of what standards the U.S. Supreme Court has in place for threats as an exception to free speech rights. These standards are best articulated in the case of Virginia v. Black, 538 US 343 (2003), which holds, in pertinent part, the following:

"'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id* at 359 (citations and quotations ommitted)

32. Additional guidance on this matter can be found in the case of Watts v. United States, 394 US 705 (1969), which openly acknowledges that there was a "background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." See *id* at 708. They also went on to acknowledge that "The language of the political arena, like the language used in labor disputes, vituperative, abusive, and inexact." *id* at 708. However, they nevertheless held that this, alone, is not enough to overcome free speech rights.

33. To succeed on a claim that I threatened them to the extent necessary to override my right to only have evidence offered against me that is based on personal knowledge, the Defendants should have offer more than merely saying "behavior" and then acting like this alone is all the evidence they should need to support a finding of threat. They should have to prove a *true threat*.

## CONCLUSION

34. While considering this motion, please remember that this Court cannot issue orders without giving an explanation as to why he is ruling the way he is. I have already given numerous case laws and binding precedents showing this, so I should not have to re-state them here.

35. The Defendants are changing their story on the fly. First, they argue that being able to succeed in college is not the only determining factor behind their decision to grant funding; once

the Court determines that likelihood to succeed in the workforce is not an essential requirement after all, then they change their story to argue that I am not able to be in college (see Exhibit 1, Answers to Requested Admissions 10 & 11). Just on that alone, you can see that they're changing their story on the fly.

36. Initially, the Defendants argued that the existence of my symptoms, alone, is all the evidence they need to deny me funding. Now that the Court has already decided that this alone is not enough, they are changing their story on the fly to make it sound like they have an excuse for not conducting a more thorough individualized assessment. However, even if the circumstances offered by the Defense could, under the right circumstances, permit the admission of speculative testimony (which they do not), the Defense still has not come even remotely close to meeting the exacting standards necessary for such a prejudicial exception.

37. While considering this motion, please remember that this Court cannot issue orders without giving an explanation as to why he is ruling the way he is. I have already given numerous case laws and binding precedents showing this, so I should not have to re-state them here.

38. Wherefore, premises considered, I respectfully request that the Court order the Defense to not offer any evidence – whether at trial, in a motion, or otherwise - that I am incapable of succeeding in the workforce, the classroom, or any other aspect of life, unless this evidence is based on personal knowledge. So requested on this, the 8th day of September, 2017.

*[signature]*

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com