UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                PLAINTIFF

VS.                    CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES           DEFENDANTS

## BRIEF IN SUPPORT OF
## SECOND MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of my Second Motion for Summary Judgment.

### SECTION I: PRELIMINARY MATTERS

1. I would like to remind this court of two very important restrictions on its power:

2. First, this Court cannot raise new claims or defenses sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

     (a) See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own")

     (b) See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims").

     (c) See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

the District Court could have determined that it was necessary or appropriate to impose this order.")

(f) See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

(g) See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

(h) See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

(i) See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

(j) See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.")

(k) See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

(l) See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

11. My application for funding was denied without prejudice. See Undisputed Fact No. 7.

12. The denial was motivated, at least in part, on my disabilities, symptoms, and statutorily protected activities (or SPA's, for short). See Undisputed Facts Nos. 4 & 7.

13. While making the entirely-subjective and entirely-arbitrary determination that my symptoms would interfere with my vocational efforts, the Defendants never examined me personally (see Undisputed Fact No. 5) nor considered whether any reasonable accommodations or reasonable modifications in policies could allow me to succeed in my vocational rehabilitation (see Undisputed Fact No. 6).

14. The Defendants attempt to argue that they also denied my application in part because I supposedly acted in an inappropriate and hostile manner with them. However, this excuse is almost entirely pretextual, as evidenced by the fact that they never even mentioned this excuse until *after* this Court unequivocally explained to them that their original excuse – my symptoms make me unemployable – was not good enough to justify exclusion from public funding as a matter of law. See Undisputed Fact No. 9.

15. I have made good grades in college, particularly in math. See Undisputed Fact No. 11. This success in math will likely directly translate to success in a computer science major. See Undisputed Fact No. 12.

16. The Defendants maintain that I am not likely to succeed in the workfroce. They scoff at my arguments that I have made good grades in college, arguing that that is completely independent of, and not probative evidence of, likelihood to succeed in the workforce. See Doc. 16 and Doc. 28. However, clearly established and well documented research from hundreds of different sources, which are repeatedly taught to children in school, clearly show the complete opposite: The quality of one's education does indeed have a direct impact on your ability to

some metaphysical doubt as to the material facts." See *Matsushita* at 586. "It follows from these settled principles that if the factual context renders respondents' claim implausible — if the claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id* at 587.

23. To prevail on a claim of disability discrimination under Title II of the ADA, I must prove the following elements: (1) I am a qualified individual with a disability, (2) I was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity, and (3) such exclusion, denial, or discrimination was by reason of my disability. See Folkerts v. City of Waverly, 707 F.3d 975, 983 (8th Cir. 2013). I am a "qualified individual" if I can perform the essential qualifications of a government service with or without reasonable accommodations.

24. A prima facie case under the ADA's anti-retaliation provisions requires me to show that: (1) I engaged in a statutorily protected activity; (2) an adverse action was taken against me; and (3) a causal connection exists between the adverse action and the protected activity. See Amir v. St. Lous Univ. 184 F.3d 1017, 1025 (8th Cir. 1999). See also Doc. 51, Pages 14-15.

25. To prevail on a claim of First Amendment Retaliation, I must prove the following elements: (1) I engaged in a First Amendment protected activity, (2) I was subjected to an adverse action by the Defendant, (3) the Defendant is a government employee, and (4) the adverse action was motivated, at least in part, by the First Amendment protected activity. See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

26. So with that said, let us discuss each element, one at a time.

### Sub-Section 2: Disabilities and SPA's admitted by Defense

27. First and foremost, I have Aspergers and Depression. The Defendants admit to this in

36.     However, that is purely a semantic dispute. To the extent it is relevant in this case, the bottom line is that I was not given the funding I requested when I applied to the ARS. See Undisputed Fact No. No. 7.

37.     Therefore, the second essential element for all three currently pending torts is proven beyond genuine dispute.

38.     This leaves us with only one essential element across all three torts: Causal connection.

### Sub-Section 5: Causal Connection of Disabilities Admitted by Defense

39.     Once again, this essential element is admitted by the Defendants. The Defendants, by their own admission, based their determination that I was ineligible – despite the automatic qualification of receiving SSI – at least in part on my "medical and psychological reports," aka my disabilities and the symptoms that stemmed from those disabilities. See Undisputed Fact No. 7. See also Undisputed Fact No. 4.

40.     Dr. Leslie Johnson – the licensed psychological examiner – never examined me personally. See Undisputed Fact No. 5. Therefore, the determination could not possibly have been based on sound medical knowledge.

41.     Also, it is undisputed that no reasonable accommodations or modifications in policies were ever considered by the ARS to assist me in meeting the eligibility requirements. See Undisputed Fact No. 6. This Court has already determined that the Defendants cannot lawfully discriminate against me on account of my disability unless they first determine whether any reasonable accommodations or reasonable modifications in policies would allow me to meet the eligibility requirements. See Pottgen v. Missouri state high School Activities Ass'n, 40 F.3d 926, 932 (8th Cir. 1994) ("by the express words of Congress, it is not necessary for a person to meet all eligibility requirements. Instead, if a proposed modification of those requirements is

the doubt and assume, for the sake of argument, that my alleged behavior really was something they had considered from the beginning. That still does not create a genuine dispute of material fact.

47. Remember earlier, I said there were two ways to tackle a fact during a motion for summary judgment; one of them was demonstrating that the fact, while in dispute, was nevertheless immaterial to the case. This is such an instance.

48. Even if my alleged behavior was one of the factors, that does not change the fact that my disabilities & symptoms was also, by the Defendant's own admission, a determining factor. Even if my alleged behavior was also a factor, my disabilities and symptoms were also a determining factor as well.

49. That is all I need to prevail on a claim of disability discrimination. It is black letter law that "mixed-motive" cases still entitle the Plaintiff to recovery. In fact, the law is so well-established that I do not even need to show any case law, because this Court already knows this law exists. Even if they can prove that they would have reached the same decision without considering my disabilities & symptoms, that would, at best, exempt them from liability for damages; it would not exonerate them of discrimination altogether. See Doane v. City of Omaha, 115 F.3d 624, 629 (8th Cir. 1997).

50. However, that is almost certainly not the case in this case. See Exhibit 8. At the bottom, this letter clearly states ...

> "After you have meet the requirements for vocational rehabilitation services and can provide documentation of treatment, stability and recommendations from providers that you are ready for training, school or work, we will reassess your vocational service needs."

51. In other words, by the Defendants' own admission, once I had removed the symptoms & disabilities, they would have reconsidered my application! Clearly, my alleged behavior was not

responses indicate that they do not even know themselves if these defenses have any merit, that they are only searching for whatever excuses they might can possibly have that could help exonerate them or reduce their liability.

58.  I currently have a Motion to Strike pending before the Court, where I argue that these affirmative defenses are not properly before the Court. I hereby incorporate the contents of that Motion and its attached Brief in Support thereof by reference into this Brief.

59.  Besides, the affirmative defenses are all frivolous, even as is. Every last one of them. I also hereby incorporate the contents of my Motion to Strike and Brief in Support Thereof by reference into this Brief. However, for the Court's convenience, here is a brief recap of why the defenses are all frivolous.

(a)  The Court has already determined that there is no sovereign immunity of any kind. See Doc. 51, Page 15: "[T]he State of Arkasas and Defendant ARS are not entitled to invoke sovereign immunity as a bar to Stebbins's claims."

(b)  The Statute of Limitations in this case is three years, and I filed this Complaint well within that time limit.

(c)  The Court has already determined that I have stated a plausible claim for relief. See Doc..51, Page 15: "Stebbins's allegations state plausible claims for relief under Title II, the Fourteenth Amendment, and the anti-retaliation provisions of the ADA."

(d)  The case is not moot because the adverse actions of the Defendants are still ongoing.

(e)  I am not required under the Title II of the ADA to exhaust any administrative remedies before filing suit.

60.  Therefore, the Court must disregard any affirmative defenses raised by the Defendants.

61.  Since the Court cannot raise any defenses for the Defendants (see Paragraphs 2-3 of this

extra funding for the extenuating circumstances.

68. Since my request for extra funding for extenuating circumstances effectively requested ALL of my college expenses that I could not obtain elsewhere, that is what they should be ordered to pay.

69. I ask that this not be treated as damages. We have no way of knowing what the tuition will be in future academic years. Even *next* year's tuition has not yet been published by any respectible 4-year university (if indeed they have even decided on it yet). By ordering them, via an injunction, to pay those costs, whatever they may be, I am protected from the risk of tuition going up higher than anticipated.

### Sub-Section 2: Injunction to Cease and Desist

70. I also ask this Court to issue an additional injunction to the State of Arkansas. This injunction should order them to never again use my litigation history as a factor in anything they do, no mater how big or small.

71. This should include scenarios where the litigation history was only used in a purely neutral capacity. After all, they have clearly demonstrated that they cannot be trusted to use my litigation history in a neutral capacity.

### Sub-Section 3: Compensatory Damages

72. Compensatory damages are permitted when the Defendant acts with a discriminatory intent. See Meagley v. City of Little Rock, 639 F. 3d 384, 387-390 (8th Cir. 2011).

73. Discriminatory intent is unquestionably proven in this case. The Defendants, by their own admission, they declared me ineligible for ARS funding, despite being a recipient of SSI benefits (something that, according to their own policies, automatically qualifies me for ARS funding), almost entirely because of my symptoms and disabilities. By their own admission, no effort was

behalf when the Defendants have failed to adequately show a dispute of material fact themselves.

79.    With that said, let us recap the points.

    (a)    The Defendants freely admit that I am disabled.

    (b)    I receive SSI benefits, and therefore am automatically "otherwise qualified" for ARS funding, to the exclusion of all other factors.

    (c)    The Defendants admit that their adverse action was motivated, at least in part, because of my "mental and psychological reports," or more accurately, the disabilities and symptoms reported in those reports.

    (d)    The Defendants' pretextual excuse that I was hostile to the staff would, at best, relieve them of damages liability, but it would not exonerate them of discrimination in the first instance.

    (e)    However, the fact that the Defendants were willing to reconsider the application if I obtained treatment for my symptoms proves that my hostility, even if true, would not entitle them to a *Doane* exception.

    (f)    The Defendants admit that I have engaged in statutorily protected activities in the past. These statutorily protected activities are also protected by the First Amendment.

    (g)    The Defendants' records clearly indicate that my statutorily protected activities were at least one factor in determining that I would not receive ARS funding.

    (h)    I therefore ask for an injunction to pay for any college expenses (including housing, food, and school supplies) that I cannot pay for using other college-funding methods.

    (i)    I also ask the State of Arkansas to be ordered to permanently and perpetually cease and desist their retaliation against me.

    (j)    I ask for compensatory damages for the wages I lost because of my delayed entry into