UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                    PLAINTIFF

VS.                    CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES         DEFENDANTS

## BRIEF IN SUPPORT OF
## SECOND MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of my Second Motion for Summary Judgment.

### SECTION I: PRELIMINARY MATTERS

1.  I would like to remind this court of two very important restrictions on its power:

2.  First, this Court cannot raise new claims or defenses sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

    (a)   See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own")

    (b)   See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims").

    (c)   See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

(d)    See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

3.    This means that, if the Defendants, in their response to this motion, fail to establish any dispute of material fact, this Court cannot "bail out" the Defendants by raising its own disputes of material fact. To do so would cause the court to become an advocate for the defense, and I should not even have to explain to you why that is not allowed.

4.    I would also like to remind this Court that it cannot issue an order without giving an explanation behind it. Failure to give an explanation constitutes an automatic abuse of discretion.

(a)    See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations ... but this does not permit a district court to give no explanation for its decision");

(b)    See also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992) ("The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice.")

(c)    See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) ("we neverthe-less find it necessary to remand because we cannot determine from the record whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion")

(d)    See also Foman v. Davis, 371 US 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.")

(e)    See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) ("We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which

the District Court could have determined that it was necessary or appropriate to impose this order.")

(f) See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

(g) See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

(h) See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

(i) See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

(j) See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984) ("Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.")

(k) See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

(l) See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

5.  This means that, if this Court wishes to deny this Motion, it must actually state with particularity which facts are in dispute, point to the evidence presented by the defense to show that this dispute exists[1], and provide citations of law.

6.  This means that this Court cannot simply say that whatever material fact is "still in dispute" and end the analysis there. It must show what evidence the Defense has that actually disputes my evidence.

## SECTION II: FACTS OF THE CASE

7.  I have a variety of disabilities, including, but not limited to, Asperger Syndrome and Depression. See Undisputed Fact No. 1.

8.  To protect my rights under the Americans with Disabilities Act, I have often been forced to file multiple pro se lawsuits in federal court for discrimination and retaliation. This garners the anger and resentment of many local government officers who are bent on making my life a living hell because they don't like that I file so many lawsuits. See Undisputed Fact No. 2.

9.  On December 1, 2015, I went to the Arkansas Rehabilitative Services and applied for additional funding to enroll in college. See Undisputed Fact No. 3.

10. My goal was to major in computer science and enter the profession of computer and information technology. Those with bachelor's degrees in that career field make an average of $89,685.71 per year, or $1,724.73 per week. See Undisputed Fact No. 10.

---

1 And if the Defense does not produce any evidence to show this dispute of fact, that means they lose. Period. Because as I have already established in Paragraph 4(a), this Court cannot make any findings unless the evidence is presented to it by one of the parties.

Besides, this court's own local rules clearly state that a party's failure to provide rebuttal evidence in a Motion for Summary Judgment constitutes an admission of that undisputed fact. See AR Local Rule 56.1(c). It is just like if a fact was "not denied" pursuant to Fed.R.Civ.P. 36. District Judge Moody in this case even as far as to order the non-moving party to "format the responsive portion of her statement like Requests for Admission," so as to make the similarities even more glaring.

11. My application for funding was denied without prejudice. See Undisputed Fact No. 7.

12. The denial was motivated, at least in part, on my disabilities, symptoms, and statutorily protected activities (or SPA's, for short). See Undisputed Facts Nos. 4 & 7.

13. While making the entirely-subjective and entirely-arbitrary determination that my symptoms would interfere with my vocational efforts, the Defendants never examined me personally (see Undisputed Fact No. 5) nor considered whether any reasonable accommodations or reasonable modifications in policies could allow me to succeed in my vocational rehabilitation (see Undisputed Fact No. 6).

14. The Defendants attempt to argue that they also denied my application in part because I supposedly acted in an inappropriate and hostile manner with them. However, this excuse is almost entirely pretextual, as evidenced by the fact that they never even mentioned this excuse until *after* this Court unequivocally explained to them that their original excuse – my symptoms make me unemployable – was not good enough to justify exclusion from public funding as a matter of law. See Undisputed Fact No. 9.

15. I have made good grades in college, particularly in math. See Undisputed Fact No. 11. This success in math will likely directly translate to success in a computer science major. See Undisputed Fact No. 12.

16. The Defendants maintain that I am not likely to succeed in the workfroce. They scoff at my arguments that I have made good grades in college, arguing that that is completely independent of, and not probative evidence of, likelihood to succeed in the workforce. See Doc. 16 and Doc. 28. However, clearly established and well documented research from hundreds of different sources, which are repeatedly taught to children in school, clearly show the complete opposite: The quality of one's education does indeed have a direct impact on your ability to

succeed in the workforce later in life. See Undisputed Fact No. 13.

## SECTION III: LAW AND DISCUSSION

17.     For the reasons set forth below, the aforementioned undisputed facts make me entitled to judgment as a matter of law.

### Sub-Section 1: Standards for Summary Judgment

18.     To prevail on a motion for summary judgment, the movant must demonstrate two things: First, that there is no dispute of material fact, and second, that he is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56.

19.     On the first element, there are two ways to approach each fact: You can show that the fact is not in genuine dispute, or you can show that the facts are not material to the case.

20.     One good example of the latter scenario would be thus: Suppose a defendant is sued for assault and battery, and claims the affirmative defense of "self-defense" because the plaintiff provoked him by calling his girlfriend a whore. Well, whether or not that insult was made by the Plaintiff can be in dispute, and the Plaintiff would still be entitled to summary judgment, because those circumstances do not give the Defendant the right to self-defense as a matter of law. The fact, while genuinely disputed, but it is not material to the case.

21.     The other way to demonstrate that there is no genuine dispute of material fact is to prove the fact in my favor beyond genuine dispute. To do this, all evidence must be presumed in a light most favorable to the non-movants. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). See also Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 588 (1986).

22.     However, that does not mean that I must prove the facts beyond a shadow of a doubt. To survive summary judgment, "the issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." See *Matsushita* at 586. "It follows from these settled principles that if the factual context renders respondents' claim implausible — if the claim is one that simply makes no economic sense — respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id* at 587.

23. To prevail on a claim of disability discrimination under Title II of the ADA, I must prove the following elements: (1) I am a qualified individual with a disability, (2) I was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity, and (3) such exclusion, denial, or discrimination was by reason of my disability. See Folkerts v. City of Waverly, 707 F.3d 975, 983 (8th Cir. 2013). I am a "qualified individual" if I can perform the essential qualifications of a government service with or without reasonable accommodations.

24. A prima facie case under the ADA's anti-retaliation provisions requires me to show that: (1) I engaged in a statutorily protected activity; (2) an adverse action was taken against me; and (3) a causal connection exists between the adverse action and the protected activity. See Amir v. St. Lous Univ. 184 F.3d 1017, 1025 (8th Cir. 1999). See also Doc. 51, Pages 14-15.

25. To prevail on a claim of First Amendment Retaliation, I must prove the following elements: (1) I engaged in a First Amendment protected activity, (2) I was subjected to an adverse action by the Defendant, (3) the Defendant is a government employee, and (4) the adverse action was motivated, at least in part, by the First Amendment protected activity. See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

26. So with that said, let us discuss each element, one at a time.

### Sub-Section 2: Disabilities and SPA's admitted by Defense

27. First and foremost, I have Aspergers and Depression. The Defendants admit to this in

their response to my Requests for Admissions. I am not required to show proof of something the Defendants admit to in response to a Request for Admissions. See Fed.R.Civ.P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended").

28. They also admit that I have engaged in SPA's in the past. See Undisputed Fact No. 2. Again, this is admitted by the Defendants in response to a Request for Admissions. Therefore, no further proof is needed.

29. My SPAs are also protected by the First Amendment. See Cali. Motor Trans. Co. v. Trucking Unlimited, 404 US 508 (1972): "The right of access to the courts is indeed but one aspect of the right of petition."

30. This means that the first essential element for the torts of ADA retaliation and First Amendment Retaliation are conclusively established by the Defendant's own admission.

### Sub-Section 3: Being a qualified individual

31. I receive SSI. See Undisputed Fact No. 15.

32. Therefore, I am qualified for ARS funding. See Undisputed Fact No. 4.

33. This, combined with Undisputed Fact No. 1, means that I am unquestionably an "otherwise qualified individual with a disability." Period.

34. Therefore, the first essential element for the tort of Title II Disability Discrimination is proven beyond genuine dispute.

### Sub-Section 4: Adverse Action subject only to semantic dispute

35. The Defendants state that I was not "denied" funding, but rather, was found to be ineligible. Presumably, this means that I could become eligible if I met certain conditions in the future (more on that when we get to Sub-Section 6).

36.    However, that is purely a semantic dispute. To the extent it is relevant in this case, the bottom line is that I was not given the funding I requested when I applied to the ARS. See Undisputed Fact No. No. 7.

37.    Therefore, the second essential element for all three currently pending torts is proven beyond genuine dispute.

38.    This leaves us with only one essential element across all three torts: Causal connection.

### Sub-Section 5: Causal Connection of Disabilities Admitted by Defense

39.    Once again, this essential element is admitted by the Defendants. The Defendants, by their own admission, based their determination that I was ineligible – despite the automatic qualification of receiving SSI – at least in part on my "medical and psychological reports," aka my disabilities and the symptoms that stemmed from those disabilities. See Undisputed Fact No. 7. See also Undisputed Fact No. 4.

40.    Dr. Leslie Johnson – the licensed psychological examiner – never examined me personally. See Undisputed Fact No. 5. Therefore, the determination could not possibly have been based on sound medical knowledge.

41.    Also, it is undisputed that no reasonable accommodations or modifications in policies were ever considered by the ARS to assist me in meeting the eligibility requirements. See Undisputed Fact No. 6. This Court has already determined that the Defendants cannot lawfully discriminate against me on account of my disability unless they first determine whether any reasonable accommodations or reasonable modifications in policies would allow me to meet the eligibility requirements. See Pottgen v. Missouri state high School Activities Ass'n, 40 F.3d 926, 932 (8th Cir. 1994) ("by the express words of Congress, it is not necessary for a person to meet all eligibility requirements. Instead, if a proposed modification of those requirements is

'reasonable,' a person can be a 'qualified individual.'"). See also Doc. 51, Page 13 (same).

42. No such accommodations or modifications were considered. See Undisputed Fact No. 6. Also, since I was never examined personally, I was never given the opportunity to suggest any accommodations or modifications that might enable me to meet the eligibility requirements. I have already suggested one accommodation in my response to the Defendant's Motion to Dismiss: Allowing me to attend college while simultaneously attending therapy for my symptoms! The fact that the Magistrate Judge referenced that accommodation/modification in his Recommended Partial Disposition[2] suggests to me that he considered that modification/accommodation to be quite reasonable indeed!

43. I expected this to be the final nail in the coffin for the Defendants. However, there is one more thing that needs to be addressed before I can conclusively say I am entitled to summary judgment on the tort of Title II disability discrimination.

### Sub-Section 6: Alleged hostility excuse does not exempt Defense from liability, even if it is accepted as true.

44. The Defendants are attempting to save face by introducing an entirely new, never-before-seen excuse into this case: That their decision to deny me funding for college was also based in part on my allegedly inappropriate and hostile behavior with the ARS staff.

45. As I have already demonstrated in the Statement of Undisputed Facts, this is almost certainly a pretextual excuse, as evidenced by the fact that they only began using this excuse *after* it was determined by the Court that they needed a better excuse.

46. However, summary judgment requires that the evidence be viewed in a light most favorable to the Defendants. See *Matsushita* at 588. So let us give the Defendants the benefit of

---

2 See Doc. 51, Page 12: "For example, he suggests that ARS could provide benefits for him to begin college, but allow him to simultaneously participate in therapy in an effort to alleviate the symptoms that ARS claims would interfere wtih his vocational success."

the doubt and assume, for the sake of argument, that my alleged behavior really was something they had considered from the beginning. That still does not create a genuine dispute of material fact.

47. Remember earlier, I said there were two ways to tackle a fact during a motion for summary judgment; one of them was demonstrating that the fact, while in dispute, was nevertheless immaterial to the case. This is such an instance.

48. Even if my alleged behavior was one of the factors, that does not change the fact that my disabilities & symptoms was also, by the Defendant's own admission, a determining factor. Even if my alleged behavior was also a factor, my disabilities and symptoms were also a determining factor as well.

49. That is all I need to prevail on a claim of disability discrimination. It is black letter law that "mixed-motive" cases still entitle the Plaintiff to recovery. In fact, the law is so well-established that I do not even need to show any case law, because this Court already knows this law exists. Even if they can prove that they would have reached the same decision without considering my disabilities & symptoms, that would, at best, exempt them from liability for damages; it would not exonerate them of discrimination altogether. See Doane v. City of Omaha, 115 F.3d 624, 629 (8th Cir. 1997).

50. However, that is almost certainly not the case in this case. See Exhibit 8. At the bottom, this letter clearly states ...

> "After you have meet the requirements for vocational rehabilitation services and can provide documentation of treatment, stability and recommendations from providers that you are ready for training, school or work, we will reassess your vocational service needs."

51. In other words, by the Defendants' own admission, once I had removed the symptoms & disabilities, they would have reconsidered my application! Clearly, my alleged behavior was not

used by them as a stand-alone justification for denying me funding! By the Defendant's own admission, their decision had the possibility of being different if I did not have the symptoms they complained about!

52.     Therefore, the third and final essential element of Title II disability discrimination is proven beyond genuine dispute. The Defendants confess that my symptoms stemming from my disabilities were a determining factor in their decision to deny me funding (and that they used my medical and psychological reports as evidence of these symptoms), and even with my alleged behavior, their decision would almost certainly have been different without those symptoms.

53.     Therefore, I am entitled to summary judgment on the tort of Title II disability discrimination.

### Sub-Section 7: Causal Connection of SPA's.

54.     My statutorily protected activities (SPA's) were unquestionably one of the factors in Dr. Leslie Johnson's decision to recommend that I be denied funding. See Undisputed Fact No. 4. Her recommendation explicitly referenced my litigation history (and even acknowledged that my litigation history was primarily civil and discrimination) as one of the reasons behind her recommendation.

55.     The Defendants can deny saying this until the cows come home. It is too late for that. The cat is out of the bag. They have explicitly stated that my litigation history was one of the reasons for the adverse action!

56.     Therefore, the third and final essential element for the torts of ADA retaliation and First Amendment retaliation are proven beyond genuine dispute.

### Sub-Section 8: The Defendants' affirmative defenses are not properly before the court and are frivolous even as-is.

57.     The Defendants have attempted to raise several affirmative defenses. Their discovery

responses indicate that they do not even know themselves if these defenses have any merit, that they are only searching for whatever excuses they might can possibly have that could help exonerate them or reduce their liability.

58. I currently have a Motion to Strike pending before the Court, where I argue that these affirmative defenses are not properly before the Court. I hereby incorporate the contents of that Motion and its attached Brief in Support thereof by reference into this Brief.

59. Besides, the affirmative defenses are all frivolous, even as is. Every last one of them. I also hereby incorporate the contents of my Motion to Strike and Brief in Support Thereof by reference into this Brief. However, for the Court's convenience, here is a brief recap of why the defenses are all frivolous.

  (a) The Court has already determined that there is no sovereign immunity of any kind. See Doc. 51, Page 15: "[T]he State of Arkasas and Defendant ARS are not entitled to invoke sovereign immunity as a bar to Stebbins's claims."

  (b) The Statute of Limitations in this case is three years, and I filed this Complaint well within that time limit.

  (c) The Court has already determined that I have stated a plausible claim for relief. See Doc..51, Page 15: "Stebbins's allegations state plausible claims for relief under Title II, the Fourteenth Amendment, and the anti-retaliation provisions of the ADA."

  (d) The case is not moot because the adverse actions of the Defendants are still ongoing.

  (e) I am not required under the Title II of the ADA to exhaust any administrative remedies before filing suit.

60. Therefore, the Court must disregard any affirmative defenses raised by the Defendants.

61. Since the Court cannot raise any defenses for the Defendants (see Paragraphs 2-3 of this

Brief), that means the Defendants are left without any affirmative defenses.

62.     This means that all the essential elements of prima facie Title II disability discrimination, ADA retaliation, and First Amendment retaliation – which have been proven beyond genuine dispute – go uncontested. I am therefore entitled to judgment as a matter of law on all three remaining torts.

## SECTION IV: RELIEF REQUESTED

63.     So I am entitled to judgment as a matter of law on the torts of Title II disability discrimination, ADA retaliation, and First Amendment retaliation. The only question is … what should I get in order to make me whole?

### Sub-Section 1: Injunction to pay for college

64.     First, I ask for the State of Arkansas, the ARS, and Amy Jones to all be ordered to reverse their decision and approve my application for college funding.

65.     I ask that they be ordered to pay all of my college expenses in the first instance that I cannot obtain from FAFSA, scholarships, or other traditional college funding methods. After all, as I stated in my Complaint and Jury Demand …

> "All students who qualify at all are eligible to receive at least $5,300 per year ($5,000 per year for tuition/room/board and $300 for textbooks) in grants that do not have to be repaid, but the ARS can provide extra funds for extenuating circumstances, at the manager's discretion, with no maximum amount of funding"

66.     This policy of the ARS is corroborated by Exhibit 3, Page 1, Paragraph 3, which states in pertinent part …

> "The eligibility requirements are applicable without regard to the … anticipated cost of services required by an applicant"

67.     However, the Defendants have already shown that they cannot be trusted to evaluate my applications impartially. If they are to be ordered to grant my application, that should include the

extra funding for the extenuating circumstances.

68.     Since my request for extra funding for extenuating circumstances effectively requested ALL of my college expenses that I could not obtain elsewhere, that is what they should be ordered to pay.

69.     I ask that this not be treated as damages. We have no way of knowing what the tuition will be in future academic years. Even *next* year's tuition has not yet been published by any respectable 4-year university (if indeed they have even decided on it yet). By ordering them, via an injunction, to pay those costs, whatever they may be, I am protected from the risk of tuition going up higher than anticipated.

### Sub-Section 2: Injunction to Cease and Desist

70.     I also ask this Court to issue an additional injunction to the State of Arkansas. This injunction should order them to never again use my litigation history as a factor in anything they do, no mater how big or small.

71.     This should include scenarios where the litigation history was only used in a purely neutral capacity. After all, they have clearly demonstrated that they cannot be trusted to use my litigation history in a neutral capacity.

### Sub-Section 3: Compensatory Damages

72.     Compensatory damages are permitted when the Defendant acts with a discriminatory intent. See Meagley v. City of Little Rock, 639 F. 3d 384, 387-390 (8th Cir. 2011).

73.     Discriminatory intent is unquestionably proven in this case. The Defendants, by their own admission, they declared me ineligible for ARS funding, despite being a recipient of SSI benefits (something that, according to their own policies, automatically qualifies me for ARS funding), almost entirely because of my symptoms and disabilities. By their own admission, no effort was

made to examine me personally, and their own records clearly indicate that no accommodations or modifications were ever considered.

74. They did it because they expected to get away with it. They argued during their Motion to Dismiss that they were above the law. See Doc. 16 ("the determination of [eligibility] is solely at the discretion of the ARS"). They did not do it because the discrimination was only an unintended side effect of an otherwise legitimate, good faith policy. They did it because they believed they *could*.

75. As I have demonstrated, my lost wages in this case is $89,685.71 per year, or $1,724.73 per week. Therefore, I hereby request compensatory damages of $1,724.73 per week, starting from December 17, 2015 and lasting until I begin college at ARS's expense per the injunction requested in Sub-Section 1.

### Sub-Section 4: Punitive Damages

76. I also have the right to recover puntive damages in this case. Sec. 203 of the Americans with Disabilities Act – which governs the remedies and penalties for a violation of Title II thereof – states that the remedies and penalties are the same as those for employment discrimination under the Rehabilitation Act. Employment discrimination allows the recovery of punitive damages, and therefore, they are also recoverable in this case.

77. I therefore request punitive damages of four times the compensatory damages. That comes out to $6,898.92 per week, starting at December 17, 2015 and continuing until I begin college at ARS's expense per the injunction requested in Sub-Section 1.

### SECTION VI: CONCLUSION

78. Before we wrap this Brief up, I would like to remind this Court that (A) it cannot issue a ruling without giving an explanation, and (B) it cannot raise new defenses on the defendant's

behalf when the Defendants have failed to adequately show a dispute of material fact themselves.

79.  With that said, let us recap the points.

(a)  The Defendants freely admit that I am disabled.

(b)  I receive SSI benefits, and therefore am automatically "otherwise qualified" for ARS funding, to the exclusion of all other factors.

(c)  The Defendants admit that their adverse action was motivated, at least in part, because of my "mental and psychological reports," or more accurately, the disabilities and symptoms reported in those reports.

(d)  The Defendants' pretextual excuse that I was hostile to the staff would, at best, relieve them of damages liability, but it would not exonerate them of discrimination in the first instance.

(e)  However, the fact that the Defendants were willing to reconsider the application if I obtained treatment for my symptoms proves that my hostility, even if true, would not entitle them to a *Doane* exception.

(f)  The Defendants admit that I have engaged in statutorily protected activities in the past. These statutorily protected activities are also protected by the First Amendment.

(g)  The Defendants' records clearly indicate that my statutorily protected activities were at least one factor in determining that I would not receive ARS funding.

(h)  I therefore ask for an injunction to pay for any college expenses (including housing, food, and school supplies) that I cannot pay for using other college-funding methods.

(i)  I also ask the State of Arkansas to be ordered to permanently and perpetually cease and desist their retaliation against me.

(j)  I ask for compensatory damages for the wages I lost because of my delayed entry into

the workforce, in the amount of $1,724.73 per week, starting from December 17, 2015 and lasting until I begin college at ARS's expense. I am entitled to this because the Defendants clearly acted with the intent to use my disabilities as grounds for denying me funding.

(k)   I also ask for punitive damages four times the weekly amount of compensatory damages.

80.   Wherefore, premises considered, I respectfully request that this Court issue summary judgment in my favor, issue injunctions to Amy Jones and the ARS to pay for all my college expenses that I cannot obtain funding for otherwise, issue an injunction to the State of Arkansas to never again use my litigation history as a factor in any of their decisions, award me compensatory damages in the amount of $1,724.73 per week from December 17, 2015 until I begin college, award punitive damages of four times that amount, and any other relief to which I may be entitled.

81.   So requested on this, the 26th day of September, 2017.

/s/ David Stebbins  
David Stebbins  
123 W. Ridget St.,  
APT D  
Harrison, AR 72601  
870-204-6516  
stebbinsd@yahoo.com