FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 28 2017

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DAVID A. STEBBINS                                                    , PLAINTIFF

VS.                          CASE NO. 4:16CV00545-JM

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES            DEFENDANTS

### STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
### SECOND MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Statement of Undisputed Facts in Support of my Second Motion for Summary Judgment.

**UNDISPUTED FACT NO. 1 – I have several disabilities, including but not limited to Aspergers and Depression.**

- See Exhibit 1, Answer to Requested Admission No. 1

**UNDISPUTED FACT NO. 2 – I have filed several ADA discrimination lawsuits in the past, which the Defendants were aware of.**

- See Exhibit 1, Answers to Requested Admissions Nos. 2 & 3.

**UNDISPUTED FACT NO. 3 – I applied for ARS funding to attend college at Arkansas Tech University on December 1, 2015.**

- See Exhibit 2

- See also Exhibit 1, Answer to Requested Admission No. 4.

**UNDISPUTED FACT NO. 4 – On December 15, 2015, licensed psychological examiner Leslie Johnson issued a recommendation that I be determined ineligible for ARS assistance, in part because of my statutorily protected activities, and in part because I have symptoms that she believes could, in some vague, unspecified ways, interfere with my vocational

**rehabilitation.**

- See Exhibit 5

    "A search of public records revealed multiple lawsuits filed by Mr. Stebbins ... Causes of action were mainly civil rights and discrimination."

also ...

   "Following is a list of ways in which the individual's [symptoms] are likely to be manifested in a vocational setting.

   IMPULSIVITY MAY RESULT IN POOR CHOICES IN JOB ENVIRONMENT
   DEPRESSION MAY INTERFERE WITH COUNSELING/JOB INTERVIEWS
   MAY BE SOURCE OF DISTRACTION TO CO-WORKERS
   DIFFICULTY ASSESSING CONSEQUENCES OF DECISION ALTERNATIVES
   DIFFICULTY RELATING WITH INSTRUCTORS/STUDENTS/CO-WORKERS
   DIFFICULTY PERFORMING TASKS WHICH INVOLVE PEOPLE
   DIFFICULTY CHANGING BEHAVIOR TO MEET REQUIREMENTS
   EMOTIONAL INTENSITY MAY INTERFERE WITH TASK PERFORMANCE
   CONFLICTS MAY BECLUDE ADEQUATE TASK PERFORMANCE"

   Please note that no other "problem areas" are listed. The **_only two_** "problem areas" given

in this recommendation are my litigation history and my disability symptoms. Take those two

out, and there is literally nothing else to support the recommendation of denial of services,

frivolous or otherwise, discriminatory or otherwise.

**UNDISPUTED FACT NO. 5 – While forming the recommendation spoken of in**

**Undisputed Fact No. 4, Dr. Leslie Johnson never examined me personally.**

- See Exhibit 1, Answer to Requested Admission No. 8.

**UNDISPUTED FACT NO. 6 – While forming the recommendation spoken of in**

**Undisputed Fact No. 4, Dr. Leslie Johnson never considered whether any reasonable**

**accommodations would allow me to overcome any real or perceived deficiencies.**

- See Exhibit 6.

Notice how, in the section titled "assessment problems or questions to be addressed," it says "recommendation regarding feasability of training/VR services." Therefore, these notes were almost certainly what Dr. Johnson used to reach the recommendation spoken of in Undisputed Fact No. 4.

However, notice how, near the bottom, there is a space for the doctor to discuss what accommodations are needed. However, this space is left entirely blank, thus proving (unless the Defendant can show rebuttal evidence; but it is up to them to show said rebuttal evidence) that accommodations were not considered. Since ti is equally undisputed that the psychologist did not examine me in person, that means that I was never given the opportunity to pitch my own ideas about what accommodations could enable me to succeed in the classroom/workforce.

- See also Exhibits 1 & 7. These two exhibits, in tandem, prove that no accommodations were ever considered.

In Exhibit 1, the Defendants denied Requested Admission No. 9. In other words, they claimed that they considered whether any reasonable accommodations would help me overcome my lack of eligibility.

We now turn to Exhibit 5. Requests for Production Nos. 67-84 asked the Defendant to show proof that the Requested Admissions were each false. This was done to ensure that they could not deny a fact that they knew to be true; they had to back up their denials with evidence if they had them.

In their responses to Requests for Production Nos. 71, 72, 73, 74, 77, 78, the Defendants merely defer me to the documents produced in response to Request for Production No. 1. However, in response to Request for Production No. 75, the Defendants object to the request for production without deferring me to the documents produced in response to Request for

Production No. 1.

Request for Production No. 1 requested "all evidence that was used to support Jones' denial." This means that, if something is not in the 130-page document they produced in response to this Request, then ti was a factor in their decisions.

So by the Defendant's own admission, no evidence is going to be found in the 130-page document they produced that shows they ever considered any reasonable accommodations.

The Defendants may yet be able to refute this undisputed fact. However, to do so, they must produce evidence of accommodations they actually considered, and then struck down. If they cannot do so, this fact is undisputed pursuant to AR Local Rule 56.1(c).

This is ultimately what truly proves that no accommodations were considered. If they were considered, there should be evidence of their consideration, meaning the Defendants should be able to attach said evidence in their response to this Motion. If they do not, that alone is all the proof I should need that no evidence exists.

**UNDISPUTED FACT NO. 7 – On December 17, 2015, Amy Jones rejected my application for ARS services (although they do not call it a "denial," they say I was "found to be ineligible," but that is just semantics. The bottom line is ... I did not get the funding and assistance I asked for), in part because of my symptoms.**

- See Exhibit 7, making an express reference to the "Licensed psychological examiner" (aka the recommendation produced in Exhibit 3) as the primary reason for the rejection.
- See also Exhibit 9, Answer to Interrogatory No. 2, which says in pertinent part ...

    "This determination [that Plaintiff was not to receive funding] was based on Amy Jones' assessment of Plaintiff's inappropriate and hostile interactions with the staff, his medical and psychological reports and refusal for treatment."

    In other words, by the Defendants' own admission, my disabilities and symptoms

(because that's what my "medical and psychological reports" would have shown) were at least one factor in their decision to refuse to give me any funding (you can call that decision a denial; you can call it a finding of ineligibility; you can call it a hot dog for all I care. It was still an adverse action). Even if other factors might have also been used (such as my alleged interactions with the staff that they considered to be inappropriate and hostile), my disabilities and symptoms were still one of those factors.

**UNDISPUTED FACT NO. 8 – The Defendants are only just now attempting to create another excuse for the denial of funding, by stating that my interactions with them were inappropriate and hostile.**

- See Exhibit 9, Answer to Interrogatory No. 2.
- See also Exhibits 10-16

**UNDISPUTED FACT NO. 9 – There is a 99.99999999% chance that the complaints about the inappropriate behavior were only created recently as a pretextual excuse, and were not originally factors in the denial of funding.**

- See Doc. 16, Defendants' Brief in Support of Motion to Dismiss.

You will notice **_at no point_** in that entire Brief do the Defendants ever make even the slightest reference to my supposed inappropriate and/or hostile interactions with the ARS staff. Instead, to the extent they addressed the merits of the Complaint and Jury Demand, they focused *exclusively* on their assertion that my symptoms and disabilities were all the justification they needed to deny me funding.

- See also Doc. 28, Defendant's Response to Plaintiff's First Motion for Partial Summary Judgment.

This pleading repeats the same sentiments as Doc. 16, and containing just as little

references to my alleged behavior.

- See also Exhibit 17.

This was the records the ARS sent to my ex attorney explaining the reasoning behind the denial. This email is dated December 22, 2015, when the adverse action was still fresh. You can see, off to the side, that it is Exhibit 3 which is attached to this email. You can also see that there are only 2 pages in the attachment. This means that Exhibit 3 is the only document attached to that page.

In other words, my alleged behavior with the ARS staff was clearly NOT INCLUDED in their original report of why I should be denied services!

The only way this could possibly be untrue is if the ARS in fact sent the reports of my allegedly inappropriate behavior to the attorney, and it was the attorney, not the ARS, who removed those reports before sending them to me. If the Defendants have any evidence that this in fact what happened, then by all means, let them produce it in their Response to this Motion! But if they cannot produce any evidence to that effect, then this fact is undisputed by default, pursuant to AR Local Rule 56.1(c)!

- See also Docs. 75 & 76.

After Doc. 51 was issued by the Magistrate Judge, unequivocally explaining to the Defendants that my symptoms, by themselves, all the grounds they need to deny me funding, then, and only then, do we get even the slightest reference from the Defendants that my "behavior" was ever a consideration in ANYTHING they did! This is literally the earliest reference, both in this lawsuit and before it, of my supposed behavior with the ARS staff.

In other words, the evidence that their complaints of my behavior are pretextual is because ... they only ever mentioned it after they had a clear motive to come up with a pretextual

excuse (namely ... the threat of liability because their original excuse is not good enough).

However, even if this excuse is not pretextual, even if it was not completely made up after the Court declared their original excuse to be legally insufficient, it still does not protect the Defendants for reasons I will get into in Section III, Sub-Section 6 of the Brief.

**UNDISPUTED FACT NO. 10 – The average annual salary in the United States for a person with a bachelor's degree in the field of computer and information technology for the year 2016 – the most recent year for which statistics are available – is $89,685.71 per year, or $1,724.73 per week.**

- See Exhibit 18.

Although this article gives an estimate of $82,860 per year, it is important to note that this average includes career fields that are not relevant in this case.

Ten career fields are listed. However, one of them - "Computer and Information Research Scientists" - requires a graduate degree. The ARS almost certainly does not provide funding for graduate degrees. Another career field - "web developers" - requires an associates degree. If I am entitled to any relief at all in the case, I would, at minimum, be entitled to have ARS pay for a bachelor's degree, since that is what I was applying to do in the first place. So we can safely omit that career. A third career field - "Computer Support Specialists" - has a unique entry requirement that is not related to a college degree. Because I was applying for assistance in pursuing a college degree, we can omit that career field from our calculations as well.

This leaves us with seven (7) career fields – Computer Network Architects, Computer Programmers, Computer Systems Analysts, Database Administrators, Information Security Analysts, Network and Computer Systems Administrators, and Software Developers – that require a bachelor's degree to enter.

These seven career fields have reported 2016 annual pays of $101,210 per year, $79,840 per year, $87,220 per year, $84,950 per year, $92,600 per year, $79,700 per year, and $102,280 per year, respectively.

Add all those annual pays together, and then divide that total by 7, and we get an average annual pay of $89,685.71 per year, or $1,724.73 per week.

**UNDISPUTED FACT NO. 11 – I have earned good grades in college, particularly in the fields of mathematics.**

- See Exhibit 18.

Notice I consistently made A's and B's in such classes as Business Math and Finite Mathematics. Sure, there were a few classes I received a W in. That's a long story, suffice it to say, some circumstances beyond my control made me unable to complete those courses, and I would rather withdraw from those classes than get an F.

**UNDISPUTED FACT NO. 12 – Computer science will require nearly half of my courses to be mathematics.**

No exhibit is attached to support this finding of fact. I believe it is common knowledge. Even if you are computer illiterate, you at least know that computers only speak in the language of mathematics. Everyone knows that math is an essential part of computer science. After all, that's all a computer is: Just a really advanced and versatile calculator!

If the Defendants wish to object to this undisputed fact, let them do so. But I doubt they can provide any evidence to refute this claim.

This proves that my math skills – established in Undisputed Fact No. 11 – are a clear indicator of my ability to succeed in the field of computer science.

**UNDISPUTED FACT NO. 13 - Success in school is directly indicative of success in the**

**workforce.**

Again, no exhibit is being attached, because I believe this is common knowledge. I believe it is even more common knowledge than the importance of math to computer science! Public schools constantly hammer into students' minds the importance of getting an education; they constantly repeat the sentiment that the higher your education the more money you will make.

Even when the education is not quid pro quo conditional on the job you get, the quality of your education is still directly proportionate to your level of income. For example, those who graduate high school but don't have a college degree consistently make more than those who are high school dropouts, even though, unlike a college degree, a high school diploma is not quid pro quo conditional to getting any particular job.

Maybe you could argue that this is more an indirect correlation. For example, maybe these people dropped out of high school because they were lazy bums who don't want to do work, and this refusal to work directly translates into poor wages as an adult.

But that still supports my case. Even if we accept a high school diploma as evidence of a strong work ethic, that still is half of what it takes to become successful in the workforce!

**UNDISPUTED FACT NO. 14 - I am automatically qualified for ARS funding if I receive Supplemental Security Income (SSI).**

- See Exhibit 3, Page 2

    "Social Security Disability Income (SSDI) beneficiaries and Supplemental Security Income (SSI) recipients are considered to be individuals with a significant disability (Category II) and presumed eligible for VR services, if the intent of the individual is to achieve an employment outcome."

**UNDISPUTED FACT NO. 15: I receive monthly SSI benefits.**

- See Exhibit 4

> **Are you Currently Receiving:**
>
> ⇒ SSI for Aged?      N
> ⇒ <u>SSI for Disabled?   Y</u> ⇐
>    SSDI?            N

**UNDISPUTED FACT NO. 16 – Aside from receiving either SSDI or SSI benefits, there are no objective criteria to being ineligible for ARS funding. The only grounds are the unilateral determination of the ARS staff that I will not achieve an employment outcome.**

- See Exhibit 3.

At no point in any of these four pages do you find any objective grounds that disqualify an SSI recipient like myself.

## CONCLUSION

Wherefore, premises considered, I respectfully request that this Court ...

1. ... issue summary judgment in my favor,
2. ... issue injunctions to the Defendants to pay for my college education,
3. ... issue a second injunction to the State of Arkansas to never again use my litigation history as a factor in an of their decisions,
4. ... award damages in the amount of $1,724.73 per week, starting at December 17, 2015 and continuing until I begin college at the Defendant's expense,
5. ... award punitive damages in the amount of four times the amount of compensatory damages, and

6. ... any other relief the Court finds appropriate.

So requested on this, the 26th day of September, 2017.

*David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com